# EXHIBIT 5



FL-2019-000010

FL-2019-000010

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS & PROPERTY COURTS OF ENGLAND AND WALES**
**COMMERCIAL COURT (KBD)**
**FINANCIAL LIST**

**BEFORE: The Honourable Mr Justice Picken**

**DATED:  9 June 2023**

**B E T W E E N:**

**(1) PALLADIAN PARTNERS LLP**
**(2) HBK MASTER FUND L.P**
**(3) HIRSH GROUP LLC**
**(4) VIRTUAL EMERALD INTERNATIONAL LIMITED**

<u>Claimants</u>

**-and-**

**(1) THE REPUBLIC OF ARGENTINA**
**(2) THE BANK OF NEW YORK MELLON (as Trustee)**

<u>Defendants</u>

_____

**ORDER**

_____

**UPON** the Court having handed down Judgment on 5 April 2023 and having adjourned all consequential matters to this further hearing on 8 and 9 June 2023

**AND UPON** reading the evidence filed by the Claimants, the Republic and the Trustee

**AND UPON** hearing Sue Prevezer KC, Alex Barden and James Shaerf for the Claimants, Ben Valentin KC, Tamara Oppenheimer KC, Samuel Ritchie and Francesca Ruddy for the First Defendant ("**the Republic**") and Adam Zellick KC and Ian Bergson for the Second Defendant ("**the Trustee**")

1

**AND UPON** the Claimants having made a Part 36 offer dated 5 February 2020, and having obtained a judgment which is more advantageous than that offer

**AND UPON** the relevant period in respect of such Part 36 Offer having expired on 26 February 2020, so that the relevant period for Part 36 consequences is 27 February 2020 to the date of this Order (9 June 2023) ("**the Part 36 Period**")

**AND UPON** the Republic having confirmed in its Written Opening dated 12 October 2022 that it was not pursuing its case that the "binding effect" provisions of the Securities apply to the question of whether the Payment Conditions have been satisfied

**AND UPON** the Claimants and the Trustee agreeing that:

    a) The Claimants will pay to the Trustee any monies paid by the Republic to or otherwise recovered by the Claimants pursuant to this Order

    b) The Trustee is to apply monies received by it in satisfaction of the Judgment Sums (as defined below and whether paid to the Trustee by the Republic directly or by the Claimants pursuant to Schedule A or otherwise or from any other source) in accordance with this Order and the Indenture and the Terms and Conditions of the Securities

    c) Certain further mechanics of enforcement shall (if they become necessary) be governed by the agreed Schedule A (which the Trustee considers in the interests of the Holders and beneficial holders)

**AND UPON** this Order being without prejudice to the Trustee's right of indemnity (including in respect of its costs) from the Republic under the Indenture

**THE COURT ORDERS AS FOLLOWS:**

**<u>Meaning of the Securities</u>**

1.    It is declared that in respect of the EUR-denominated GDP-linked securities issued by the Republic ("**the Securities**"):

2

a. If the Year of Base Prices employed by INDEC for determining Actual Real GDP shall at any time be other than 1993 Year of Base Prices, for each Reference Year, Base Case GDP for that Reference Year as set out in the table forming part of the definition of Base Case GDP in the Terms and Conditions shall be adjusted by multiplying the Base Case GDP for that particular Reference Year by a particular fraction calculated for each particular Reference Year as follows: the numerator of which shall be the Actual Real GDP for that particular Reference Year measured in the Year of Base Prices published by INDEC for that particular Reference Year, and the denominator of which shall be the Actual Real GDP for that particular Reference Year measured in 1993 Year of Base Prices.

b. The Republic is required to produce the necessary statistical information and carry out those of the calculations which it is required to perform via INDEC and/or the Ministry of Economy (or the successors thereto), as appropriate, or shall procure such bodies to do so.

c. The Republic shall carry out those functions, or procure that they be carried out, in a manner which is consistent with the Terms and Conditions of the Securities, for proper purposes, and in a way that is not irrational, arbitrary or capricious.

## Sums Payable

2. The total Payment Amount for Reference Year 2013, which was payable on 15 December 2014, is EUR 1,329,760,063.39 based on a total of 18,947,453,841 Securities currently in issue (being EUR 7.01814647260615 cents per each unit of notional amount of EUR-denominated Securities) (the "**2013 Payment Amount**").

3. The basic rate of pre-judgment interest payable on the 2013 Payment Amount ("**Pre-Judgment Interest**") is 2% per annum above Euribor with a 6 month tenor calculated based on the average rate over each 6 month period, amounting to EUR 233,220,560.34, or EUR 1.23088074155906 cents per unit of notional amount, up to 9 June 2023.

4. Based upon their holdings of the Securities as at the date of Judgment and for as long as they retain these holdings of the Securities, the Claimants' respective shares of the 2013 Payment Amount and the Pre-Judgment Interest are, up to 9 June 2023:

   a. First Claimant: EUR 235,456,394.03 (being EUR 8.24902721416521 cents on 2,854,353,464 notional amounts).

   b. Second Claimant: EUR 254,178,690.59 (being EUR 8.24902721416521 cents on 3,081,317,154 notional amounts).

   c. Third Claimant: EUR 10,063,813.20 (being EUR 8.24902721416521 cents on 122,000,000 notional amounts)

   d. Fourth Claimant: EUR 256,443,560.41 (being EUR 8.24902721416521 cents on 3,108,773,359 notional amounts).

5. Under CPR 36.17(4), the Claimants are entitled to the following ("**the Part 36 Entitlements**"):

   a. Payment of an Additional Amount of EUR 87,417.68 (being the EUR equivalent of £75,000 as at 9 June 2023).

   b. Uplifted interest in respect of their respective shares of the 2013 Payment Amount of a further 3% in excess of the basic rate of 2% per annum above EURIBOR, for the Part 36 Period.

   c. Such amounts are, up to 9 June 2023:

      i. First Claimant: EUR 20,026,104.71 (being EUR 0.700644956181847 cents on 2,854,353,464 notional amounts (plus EUR 27,221.13 by way of Additional Amount)).

      ii. Second Claimant: EUR 21,618,478.84 (being EUR 0.700644956181847 cents on 3,081,317,154 notional amounts (plus EUR 29,385.62 by way of Additional Amount)).

      iii. Third Claimant: EUR 855,950.32 (being EUR 0.700644956181847 cents on 122,000,000 notional amounts (plus EUR 1,163.48 by way of Additional Amount)).

      iv. Fourth Claimant: EUR 21,811,111.20 (being EUR 0.700644956181847 cents on 3,108,773,359 notional amounts (plus EUR 29,647.46 by way of Additional Amount)).

   d.  Uplifted interest in their respective shares of any Payment Amount falling due under paragraph 18(b) below (save in respect of Reference Year 2022 and any year thereafter), of a further 3% in excess of the basic rate of 2% per annum above EURIBOR, for the portion of the Part 36 Period during which the relevant Payment Amount was outstanding.

6. Post-judgment interest shall accrue on the 2013 Payment Amount, the Pre-Judgment Interest (including the uplifted interest under paragraph 5(b)) and the Part 36 Entitlements at 2% per annum above Euribor with a 6 month tenor calculated based on the average rate over each 6 month period from the date of this Order, being 9 June 2023 ("**Post-Judgment Interest**").

7. The Republic shall pay the Claimants' costs of the Proceedings, other than those incurred after 12 October 2022 in connection with the Claimants' Alternative Case that the Republic did not act in good faith and for proper purposes (the "**Claimants' Costs**"). The Claimants' Costs shall, if not agreed, be assessed on the standard basis for costs incurred prior to the Part 36 Period and the indemnity basis for costs incurred after commencement of the Part 36 Period.

8. Detailed assessment of the Claimants' Costs shall be stayed until the date on which the stay of execution set out in paragraph 21 below expires, and the date for commencing detailed assessment shall be the date falling three months from the occurrence of such date.

9. The Republic shall make an interim payment of US$12,500,000 in respect of the Claimants' Costs (the "**Interim Payment**") within 45 days of the date of this Order.

10. The Republic shall pay to the Claimants the balance of the Claimants' Costs within 60 days of being served with a final costs certificate in respect of the same.

11. Interest shall accrue on the Claimants' Costs from the date such costs were paid by the Claimants:

   a.  For the period prior to the Part 36 Period, at a rate of 2% above Euribor with a 6 month tenor calculated based on the average rate of each 6 month period;

b.  From the commencement of the Part 36 Period until 9 June 2023 at a rate uplifted under CPR 36.17 of 5% per annum above Euribor with a 6 month tenor calculated based on the average rate of each 6 month period;

c.  From 9 June 2023, at a rate of 2% above Euribor with a 6 month tenor calculated based on the average rate of each 6 month period.

12. The "**Judgment Sums**" shall comprise the 2013 Payment Amount, Pre-Judgment Interest, Post-Judgment Interest, the Claimants' Costs (including the Interim Payment and interest on the Claimants' Costs) and the Part 36 Entitlements.

## Entitlements and Enforcement

13. Subject always to Recital 7(a), Schedule A and the other provisions of this Order, the Claimants are entitled, pursuant to Clause 4.9 of the Indenture, for so long as they retain holdings of the Securities, to receive from the Republic a proportion of the Judgment Sums reflecting their beneficial entitlement under the Securities as at the date of payment (subject to a reduction by their respective entitlements to any amount actually paid by the Republic to the Trustee in respect of such sums).

14. The Republic shall pay to the Trustee:

a.  the Judgment Sums (other than the Interim Payment, which is not stayed) within 45 days of the date on which the stay of execution set out in paragraph 21 below expires; and

b.  the Interim Payment, in accordance with paragraph 9 above.

15. For so long as each Claimant retains holdings of the Securities, each Claimant shall have the individual right to enforce the Judgment (including all Judgment Sums) subject to and on the basis of the agreed terms set out in Schedule A to this Order (which are also applicable generally to any payments of the Judgment Sums).

16. The parties shall have liberty to apply to the Court for any reason relating to the enforcement of this Order, including without limitation in relation to the exercise, variation or termination of actions relating to the enforcement of this Order.

17.  It is further declared that the Trustee can validly and lawfully agree to, enter into and be bound by an Order in the terms hereof, including Schedule A hereto, and the Court approves the Trustee's agreement thereof.

18.  The Republic shall by way of specific performance:

    a.  For each Reference Year from 2023 until the expiry of the Securities:

        i.  Publish or cause to be published GDP in 1993 Year of Base Prices for such Reference Year, on or by the Calculation Date for such Reference Year, using a methodology as close as possible to that used by INDEC for Reference Years 2006 to 2012, together with a description of the methodology applied, in a level of detail approximating the detail made available by INDEC for its quarterly GDP publications prior to 2014.

        ii.  Where the Payment Conditions are met and a Payment Amount is due, make payment by the later of:

        A. Payment Date for such Reference Year; or

        B. the date 45 days after the date on which the stay of execution set out in paragraph 21 below expires.

    b.  For each Reference Year from 2014 until 2022:

        i.  By 30 June 2024, publish or cause to be published GDP in 1993 Year of Base Prices for such Reference Year, using a methodology as close as possible to that used by INDEC for Reference Years 2006 to 2012, together with a description of the methodology applied, in a level of detail approximating the detail made available by INDEC for its quarterly GDP publications prior to 2014.

        ii.  Where the Payment Conditions are met and a Payment Amount is due, make payment by the later of:

        A.  the date 45 days after the publication of GDP in 1993 Year of Base Prices for the relevant Reference Year; or

        B.  the date 45 days after the date on which the stay of execution set out in paragraph 21 below expires.

iii. Pay interest on such Payment Amount for the period commencing from the date on which the Payment Amount would have fallen due (being 15 December of the year following the relevant Reference Year) at a rate of 2% above Euribor with a 6 month tenor calculated based on the average rate of each 6 month period.

**Appeal**

19. The Republic's application for permission to appeal is refused. The date for filing an Appellant's Notice with the Court of Appeal shall be 21 days from the date of this Order (30 June 2023).

20. Save for an amount equal to the Interim Payment, which shall be paid to the Claimants by the Trustee forthwith upon receipt, the Trustee shall not distribute any sums received pursuant to paragraph 14 above to holders, and shall instead hold such sums in escrow, until the date on which the stay of execution set out in paragraph 21 below expires.

**Stay of execution**

21. There shall be a stay of execution of paragraphs 7, 8, 10, 13, 14(a), and 18(b)(iii) above until:

   a. The expiry of the date in paragraph 19 above for the filing an Appellant's Notice with the Court of Appeal (if none is filed); or

   b. If an Appellant's Notice is filed by the Republic, the refusal by the Court of the Appeal of the Republic's permission application, or, if such permission is granted, determination by the Court of Appeal of any appeal and expiry of the period for applying for permission for further appeal to the Supreme Court (if none is sought); or

   c. If further permission is sought from the Supreme Court, the refusal by the Supreme Court of the Republic's permission application or, if such permission is granted, determination by the Supreme Court of any appeal.

**Dated this the 9th day of June 2023**

Copies of this Order were sealed and sent to the solicitors for the Claimants, Quinn Emanuel Urquhart & Sullivan UK LLP, for service on the First and Second Defendants.

**SCHEDULE A – AGREED TERMS RELATING TO ENFORCEMENT**

1.    The proceeds of any and all actions taken by the Claimants to enforce the Judgment Sums ("**Enforcement Actions**") shall be paid to the Trustee in accordance with the agreement referred to in the recitals to this Order.

2.    The Trustee will pay the Claimants' Costs (including the Interim Payment and any interest on the Claimants' costs) insofar as unpaid by and outstanding from the Republic, from any sums paid to the Trustee in satisfaction of the Judgment Sums (whether by the Republic directly or otherwise in accordance with this Order) prior to the Trustee's distribution of sums received to Holders, and such sums rank as first priority claims for the purposes of Section 4.5 of the Indenture. Save as set out above in this paragraph, the Trustee shall apply moneys received from the Republic as referred to in Recital 7 to this Order. In the event that any sum received by the Trustee is insufficient to discharge all amounts due and owing (a 'Part Payment'): (a) the Part 36 Entitlements shall rank equally with all other Judgment Sums (other than the Claimants' Costs provided for above); (b) the Trustee will therefore make a separate payment out of the Part Payment (a 'Part 36 Entitlement Payment') to the Claimants in respect of a rateable proportion of the Part 36 Entitlements (including any interest thereon) at the same time as the Trustee makes a distribution of the respective rateable proportion of the Judgment Sums to Holders from the Part Payment; and (c) before the Trustee makes such distribution, the Claimants shall notify the Trustee of the amount of any Part 36 Entitlement Payment that they consider is due to them in respect of any Part Payment, together with the calculations through which they have arrived at that figure.

3.    In relation to paragraph 1 above:

    a.    The Republic shall not make payments in respect of the Judgment Sums or any part of them other than direct to the Trustee, unless mandatorily required otherwise pursuant to a court ordered enforcement procedure. Save in the case of a mandatorily required payment as referred to in the preceding sentence or in cases where the Trustee has provided its express written consent, any payment made by or on behalf of the Republic shall not discharge in whole or part the Judgment Sums herein unless and until such payment is received by the Trustee, whether from the Republic directly or otherwise in accordance with this Order.

b. The Claimants shall use their best endeavours to procure that all payments in respect of the Judgment Sums are paid direct to the Trustee. If, in the course of enforcing this Judgment and notwithstanding (a) above or the aforementioned obligation, the Claimants or any of them receive payment of any Judgment Sums in whole or part, or realise proceeds via Enforcement Actions, they shall within 7 days account for and pay any such sums to the Trustee.

c. Without limiting the right of each Claimant to compromise or waive rights that do not fall within the scope of this sub-paragraph 3.c, no Claimant shall (i) in whole or part reach any settlement, (ii) enter into any agreement with the Republic, which in either case compromises or alters the Judgment or the Judgment Sums as owed to the Trustee, except with the express written consent of the Trustee, which written consent the Trustee is not to unreasonably withhold. If the Trustee fails to provide its written consent to such a proposed agreement (a "**Proposed Settlement Agreement**") within 21 days, the Trustee must call a meeting of the Holders in accordance with section 9 of the Indenture so that the Holders may vote on whether to approve the Proposed Settlement Agreement. The Trustee must then agree the Proposed Settlement Agreement if it is approved by the Holders of more than 75% in aggregate principal amount of the then Outstanding Securities (as defined in the Indenture) as set out in Section 4.11(b) of the Indenture and/or paragraph (D) of the GDP-Linked Securities Authorization.

d. In seeking any enforcement, the Claimants shall act in and use only their own names and shall not and shall have no right to act in the Trustee's name. If the Claimants consider any step or any action requires the use of the Trustee's name or the Trustee to be a party, they shall obtain the Trustee's express written consent, which consent the Trustee is not to unreasonably withhold.

e. In seeking any enforcement, the Claimants are not entitled to any indemnity from the Trustee and may not and shall not incur any liability for the Trustee. Subject to the foregoing, the Claimants' own properly incurred reasonable costs of any enforcement action, as determined and approved by the Trustee (or if not approved, then assessed by the Court), will be paid to the Claimants from any sums paid to the Trustee prior to the Trustee's distribution of sums received to

Holders, and such costs rank as first priority claims for the purposes of Section 4.5 of the Indenture.

f.  The Claimants shall provide quarterly reports to the Trustee providing details in relation to their enforcement of the Judgment Sums. The Claimants shall also answer such questions and provide such further information as the Trustee may reasonably request. If and to the extent, such reports and/or responses include privileged information, that privilege will not be in any way removed, altered, reduced or waived by reporting or answering to the Trustee; the information will be subject to privilege in the Trustee's hands; and the Republic will not be entitled to any access to any such privileged information. The Claimants' own properly incurred reasonable costs of producing reports and answering requests for information from the Trustee as approved by the Trustee (or if not approved, then assessed by the Court) shall be paid to the Claimants from any sums paid to the Trustee prior to the Trustee's distribution of sums received to Holders.

g.  Nothing in this Order limits the right of any Holder or beneficial holder to sell or otherwise deal with its Securities in any way, but (a) any Claimant which ceases to be a beneficial holder of all of its holdings of the Securities must notify the Trustee within 7 days; and (b) any Claimant that disposes of holdings cumulatively amounting to 5% of the total notional amount of the Securities since the date of Judgment or since the date of a prior notification by the Claimant to the Trustee pursuant to this sub-paragraph, must notify the Trustee within 7 days.

4.  In respect of the Part 36 Entitlements, the Claimants shall, notwithstanding the other provisions of this Schedule and of the recitals and paragraphs 14 and 15 of the Order, retain the right to enforce payment of their Part 36 Entitlements (as defined in paragraph 5 of the Order) directly against the Republic, without any need to account for and pay such amount to the Trustee. In the event of any such recovery, the sums payable by the Trustee out of any general recovery relating to the Part 36 Entitlements shall be reduced accordingly.

5.  Where reference is made in this Order under sub-paragraphs 3(c) and 3(d) above to the Trustee not unreasonably withholding its consent, agreement or approval, this is not to be construed as abrogating or in any way altering the terms of the Indenture or the

11

Terms and Conditions of the Securities and does not fetter the Trustee's discretion to act in the interests of all Holders or require the Trustee to provide consent, agreement or approval if to do so would breach or be inconsistent with the terms of the Indenture or the Terms and Conditions of the Securities or otherwise breach or be inconsistent with the Trustee's duties as trustee of the Securities.