# EXHIBIT 16

A

[CHANCERY DIVISION]

*MACLAINE WATSON & CO. LTD. v. INTERNATIONAL TIN COUNCIL (No. 2)

[1986 M. No. 7362]

B

1987  June 24, 25;                                          Millett J.
      July 9

*Execution—Practice—Discovery in aid of execution—Judgment obtained against international organisation—Disclosure of assets sought—Application for examination of officer—Whether power to make order—R.S.C., Ord. 48, r. 1—International Tin Council (Immunities and Privileges) Order 1972 (S.I. 1972 No. 120), para. 5*

C

In 1985, the applicants, dealing members of the London Metal Exchange, entered into contracts for the purchase and sale of tin with the International Tin Council ("the I.T.C."), an international organisation established by treaty and provided for by the International Tin Council (Immunities and Privileges) Order 1972.[1] The I.T.C. defaulted. In an arbitration, to which the I.T.C. submitted, the applicants obtained an award in their favour, which was converted into a judgment inclusive of costs and interest. That judgment remained unsatisfied, and the applicants, by notice of motion, sought against the I.T.C. an order under R.S.C., Ord. 48, r. 1[2] that a proper officer of the I.T.C. should attend court to be examined orally as to the nature, value and location of all assets of the I.T.C. within the United Kingdom. The master refused to make such an order.

On the applicants' appeal and further motion for similar relief under the inherent jurisdiction of the court:—

*Held*, (1) dismissing the appeal, that, since the I.T.C. was not a body corporate, and was not to be treated as such, although under the Order of 1972 the I.T.C. had the legal capacities of a body corporate, the court had no power under R.S.C., Ord. 48 to order the attendance in court of an officer of the I.T.C. to be orally examined; and that, accordingly, the applicants' appeal against the master's refusal to make an order under Order 48 had to be dismissed (post, pp. 1715F—1716B).

*In re International Tin Council* [1987] Ch. 419 followed.

But (2) granting the application, that, since the purpose for which an order was sought was to implement a judgment already obtained and it was the policy of the court, within proper limits, to prevent a defendant from concealing assets within the jurisdiction so as to deny to a successful plaintiff the fruits of his judgment, the court had an inherent jurisdiction to make an order; and that, as it would be just and convenient to do so, the I.T.C. would be ordered to disclose full particulars of the nature, value and location of all its assets within the United Kingdom, such disclosure to be verified by affidavit made by a proper officer of the I.T.C. (post, pp. 1716C–E, G–H, 1717F–H, 1718E–F).

*A.J.Bekhor & Co. Ltd. v. Bilton* [1981] Q.B. 923, C.A. applied.

---

[1] International Tin Council (Immunities and Privileges) Order 1972, para. 5: "The council shall have the legal capacities of a body corporate."

[2] R.S.C., Ord. 48, r. 1: see post, pp. 1713H—1714B.

Maclaine Watson & Co. v. I.T.C. (Ch.D.)                    [1987]

The following cases are referred to in the judgment:                    A

*Ashtiani v. Kashi* [1987] Q.B. 888; [1986] 3 W.L.R. 647; [1986] 2 All E.R. 970, C.A.

*Bekhor (A.J.) & Co. Ltd. v. Bilton* [1981] Q.B. 923; [1981] 2 W.L.R. 601; [1981] 2 All E.R. 565, C.A.

*Bonsor v. Musicians' Union* [1956] A.C. 104; [1955] 3 W.L.R. 788; [1955] 3 All E.R. 518, H.L.(E.)

*International Tin Council, In re* [1987] Ch. 419; [1987] 2 W.L.R. 1229;    B
[1987] 1 All E.R. 890

*Lister & Co. v. Stubbs* (1890) 45 Ch.D. 1, C.A.

*Maclaine Watson & Co. Ltd. v. International Tin Council* [1987] 3 W.L.R. 508

*Orwell Steel (Erection and Fabrication) Ltd. v. Asphalt and Tarmac (U.K.) Ltd.* [1984] 1 W.L.R. 1097; [1985] 3 All E.R. 747

*Stewart Chartering Ltd. v. C. & O. Managements S.A. (Practice Note)*    C
[1980] 1 W.L.R. 460; [1980] 1 All E.R. 718

The following additional cases were cited in argument:

*Interpool Ltd. v. Galani* [1987] 3 W.L.R. 1042; [1987] 2 All E.R. 891, C.A.

*Standard Chartered Bank v. International Tin Council* [1987] 1 W.L.R. 641; [1986] 3 All E.R. 257    D

*Taff Vale Railway Co. v. Amalgamated Society of Railway Servants* [1901] A.C. 426, H.L.(E.)

*Zoernsch v. Waldock* [1964] 1 W.L.R. 675; [1964] 2 All E.R. 256, C.A.

APPEAL from Master Gower and MOTION

By a notice of motion dated 19 February 1987 the applicants,    E
Maclaine Watson & Co. Ltd., sought an order requiring Peter Stephen
Lai, and/or some other officer of the International Tin Council (the
"I.T.C.") to attend before an officer of the court to be examined on
the questions, (1) whether any, and if so what, debts were owing to
the I.T.C., and (2) whether the I.T.C. had any, and if so what, other
property or means of satisfying the applicants' judgment debt, and to
produce on such examination all books or documents in his possession    F
relevant to the question at the time and place appointed for his
examination. On 19 February 1987 Master Gowers dismissed the
application. The applicants appealed.

By a further notice of motion dated 17 June 1987, the applicants
moved the court, at the hearing of their appeal against the master's
decision, for an order requiring the I.T.C., within seven days after    G
service on it of the order, to make and to serve on the applicants an
affidavit of one of its officers answering truthfully the questions posed in
the applicants' solicitors' letter to the I.T.C. dated 11 December 1986, a
copy of which was annexed to the notice of motion.

The facts are stated in the judgment.

                                                                        H
*Richard McCombe* for the applicants.
*Nicholas Chambers Q.C.* and *Peter Irvin* for the I.T.C.

                                        *Cur. adv. vult.*

9 July. MILLETT J. read the following judgment. The failure of the

A International Tin Council ("the I.T.C.") and the relevant legislative background are by now well chronicled and need not be rehearsed further. The applicants, Maclaine Watson & Co. Ltd., are ring-dealing members of the London Metal Exchange. In 1985 they entered into contracts with the I.T.C. for the purchase and sale of tin. The I.T.C. defaulted on those contracts. The applicants' claims were referred to arbitration. The I.T.C. submitted to the jurisdiction of the arbitrators

B and participated in the arbitration. In November 1986 the applicants obtained an award in their favour. The award was not satisfied. The applicants obtained leave to enforce the award in the same manner as a judgment or order to the same effect. On 25 November 1986 the applicants entered judgment against the I.T.C. for a total amount inclusive of interest of £6,024,376·40. The judgment remains unsatisfied.

C     On 9 December 1986 the applicants applied for the appointment of a receiver by way of equitable execution over those assets of the I.T.C. which consist of the right which it was said to have to be indemnified by or to demand contributions from its members for the purpose of satisfying the judgment. In May 1987 I dismissed that application: see *Maclaine Watson & Co. Ltd. v. International Tin Council* [1987] 3 W.L.R. 508. Other creditors brought actions in the Commercial Court

D to enforce their claims directly against the members. Those actions have been struck out on the ground that liabilities arising from contracts entered into by the I.T.C. in its own name are the liabilities of the I.T.C. and not of the members.

     The applicants have now lowered their sights and seek to enforce their judgment against the I.T.C.'s own assets. It is common ground that

E they are entitled to do so. The International Tin Council (Immunities and Privileges) Order 1972 conferred on the I.T.C. the legal capacities of a body corporate. These include the capacity to hold property with the result that such property is distinct from that of its members, so that a judgment obtained against it in its own name is recoverable from, and only from, its own assets: see *Bonsor v. Musicians' Union* [1956] A.C. 104. The I.T.C. has no immunity from legal process to enforce the

F arbitration award which the applicants have obtained. What, then, it may well be asked, is the difficulty? The difficulty arises from the lack of information as to the extent and whereabouts of the I.T.C.'s assets. In an endeavour to discover what assets, and in particular what bank accounts, the I.T.C. has against which their judgment can be enforced, the applicants have sought information from the I.T.C., but all requests for such information have been refused. The I.T.C., it must be said, has

G behaved more like a disreputable private debtor concerned only to hinder and delay his creditors than the responsible international organisation that it claims to be. As a result the applicants have been compelled to make an application under R.S.C., Ord. 48, r. 1. The application was refused by the master, and their appeal from his decision is now before me. In case the language of Order 48 does not permit the

H relief sought, the applicants ask in the alternative for the like relief under the inherent jurisdiction of the court.

     Order 48, so far as is material, is in the following terms:

     "1(1) Where a person has obtained a judgment or order for the payment by some other person (hereinafter referred to as 'the judgment debtor') of money, the court may, on an application made ex parte by the person entitled to enforce the judgment or order,

order the judgment debtor or, if the judgment debtor is a body corporate, an officer thereof, to attend before such master, registrar or nominated officer as the court may appoint and be orally examined on the questions—(*a*) whether any and, if so, what debts are owing to the judgment debtor, and (*b*) whether the judgment debtor has any and, if so, what other property or means of satisfying the judgment or order; and the court may also order the judgment debtor or officer to produce any books or documents in the possession of the judgment debtor relevant to the questions aforesaid at the time and place appointed for the examination. . . . (2) An order under this rule must be served personally on the judgment debtor and on any officer of a body corporate ordered to attend for examination."

The main submission on behalf of the I.T.C. is simplicity itself. The I.T.C., it is said, is neither an individual nor a body corporate but an unincorporated association. As it is not an individual, it cannot attend before the master personally or be orally examined; and, as it is not a body corporate, Order 48 does not authorise the court to order one of its officers to attend for that purpose. The applicants first sought to meet this submission by adopting a suggestion unwisely proffered from the Bench in the course of argument. Pointing out that by virtue of the Interpretation Act 1978 the word "person" in Order 48 includes a body of persons corporate or unincorporate, they submitted that the order in terms authorises the court to order any judgment debtor, whether an individual or a body of persons corporate or unincorporate, to attend before the master to be orally examined. Since only an individual can do so personally, this must mean, in the case of a body of persons, that the body should attend by some appropriate officer or member. On this reading of Order 48, the power to order a specified officer to attend is merely an alternative to the power to order the judgment debtor itself to attend by nominating some appropriate officer or member to do so. Thus the Order should be treated as if it read: "the court may . . . *either* order the judgment debtor (*whether an individual or a body of persons corporate or unincorporate, and if a body of persons corporate or unincorporate by some appropriate officer or member which it may nominate*) or, if the judgment debtor is a body corporate, an officer thereof, to attend . . ."

I have been persuaded that this is not a possible construction of Order 48. It is not only a forced and unnatural construction, but by implying words into the Order it renders one of its express provisions pointless. Whatever the position might have been if the words "or, if the judgment debtor is a body corporate, an officer thereof" were absent, their presence shows that attendance means personal attendance and excludes the possibility that a body of persons could be ordered to attend vicariously. The applicants pointed out that this leaves a lacuna in the case of an unincorporated association; but there is a lacuna anyway, for there is no power to make an order directly against an officer of such an association. The lacuna does not matter if the applicants are right, but it is still there none the less.

Accordingly, the applicants must show that the I.T.C. is a body corporate for the purposes of R.S.C., Ord. 48. It is common ground that it is not a body corporate. As I have previously pointed out in *In re International Tin Council* [1987] Ch. 419, 443, the I.T.C. is not

incorporated in the United Kingdom or anywhere else. It is neither an English nor a foreign corporation but the creation of treaty. Parliament has not granted it the status, but only the legal capacities, of a body corporate; and it has not provided that it should be deemed to be, or should be treated as, a body corporate. If Order 48 stood alone, it clearly would not confer power on the court to order an officer of the I.T.C. to attend and be orally examined.

But, say the applicants, Order 48 does not stand alone. It must be read together with the Order of 1972, which confers on the I.T.C. the legal capacities of a body corporate. These include the capacity to enter into contracts and to incur liabilities. "Capacity" in this context means "competence"; it includes the power to suffer passively as well as to act positively. So the I.T.C. can be sued as well as sue and can suffer judgment as well as obtain it. It has the capacity to be a judgment debtor and to be subjected to the process of execution. Order 48 is part of that process. But the I.T.C. has not been given full legal capacity tout court, or the legal capacities of a natural person, but specifically the legal capacities of a body corporate. So it has the capacity to incur liabilities and to suffer the legal consequences of doing so, to the same extent and in the same manner as a body corporate. Why, then, the applicants ask, is it not, by force of the Order of 1972, amenable to the process of execution, and specifically to the exercise of the court's powers under Order 48, to the same extent and in the same manner as a body corporate?

The answer, in my judgment, is that what is missing is not the capacity of the I.T.C. but the power of the court. Potential liability must not be confused with actual liability. The Order of 1972, for example, gives the I.T.C. the capacity to pay tax and so makes it a potential taxpayer, but it does not itself impose any liability to pay tax. If a new Act of Parliament were to impose a special new tax on every body corporate residing within the United Kingdom, it would be a question of construction of that Act whether it applied to a body like the I.T.C. which was not a body corporate, and it would not be enough that the I.T.C. had the necessary capacity to pay the tax if it were imposed. In like manner, the Order of 1972 makes the I.T.C. fully competent to be made subject to process such as that envisaged by Order 48, but that is not enough. To impose the process requires an order of the court, and the power of the court to make the necessary order must be sought somewhere. Unfortunately for the applicants, the power conferred on the court by Order 48 to order one of the judgment debtor's officers to attend and be orally examined is confined to the case where the judgment debtor is a body corporate; while the Order of 1972 is concerned with the competence of the I.T.C. and not that of the court. The I.T.C. has been given the capacity to be made liable, but the court has not been given the power to make it liable.

Nor, in my view, can the applicants derive any assistance from the fact that the Order of 1972 confers on the I.T.C. not merely legal capacity tout court, or the legal capacities of a natural person, but specifically the legal power of a body corporate. The I.T.C. has not merely capacity to suffer judgment and execution but specifically the same capacity to suffer judgment and execution that a body corporate has. But the difficulty lies not in any want of capacity on the part of the I.T.C., but in the absence of any power in the court to make the orders sought. What is needed to bring the I.T.C. within the scope of Order

48 is not its own capacity to be treated like a body corporate but a power in the court to treat it as such.

I reach this conclusion with regret, since it is obvious that Order 48 is not concerned with status. It makes special provision for the judgment debtor which is a body corporate, not because of its status, but because of its physical inability to attend personally and be orally examined. A body corporate combines legal capacity with physical incapacity. So does the I.T.C. There is therefore nothing in Order 48 to preclude its application to the I.T.C. That, however, is not enough for the applicants to succeed. Since Order 48, read alone, does not apply to the I.T.C., they must show that the Order of 1972 either brings the I.T.C. within its scope or itself confers the necessary power on the court. In my judgment, it does neither. Accordingly, I dismiss the applicants' appeal.

There remains the application for similar relief under the inherent jurisdiction of the court. Section 37(1) of the Supreme Court Act 1981 confers jurisdiction to grant an injunction whenever it appears to the court to be just and convenient to do so, and R.S.C., Ord. 29, r. 1 allows an application for the grant of an injunction to be made at any time before or after the trial of a cause or matter. It is now clearly established that the court has jurisdiction under section 37(1) to grant a *Mareva* injunction before trial in order to restrain a defendant from removing from the jurisdiction so much of its assets as may be needed to meet the plaintiff's pending claim. The object is to prevent a defendant from frustrating the judgment of the court by removing assets from the jurisdiction or concealing them within it and so rendering execution ineffective. In *A. J. Bekhor & Co. Ltd. v. Bilton* [1981] Q.B. 923 the Court of Appeal held that the court had power under section 37(1) to make all such ancillary orders, including an order for discovery, as appeared to the court to be just and convenient in order to ensure that the exercise of the *Mareva* injunction was effective to achieve its purpose.

A *Mareva* injunction can also be granted after final judgment in aid of execution to preserve a judgment debtor's assets until execution can be levied on them: see *Orwell Steel (Erection and Fabrication) Ltd. v. Asphalt and Tarmac (U.K.) Ltd.* [1984] 1 W.L.R. 1097 and *Stewart Chartering Ltd. v. C. & O. Managements S.A. (Practice Note)* [1980] 1 W.L.R. 460. In such a case there is normally no need to support the *Mareva* injunction with an order for discovery, since resort can be had to Order 48.

In this case the applicants rightly do not seek a *Mareva* injunction. There is no reason to believe that the I.T.C. will remove its assets from the jurisdiction in order to defeat execution. The applicants seek only an order for discovery in aid of execution, the procedure of Order 48 being unavailable. The I.T.C. contend that there is no jurisdiction to make such an order in the absence of a *Mareva* injunction. It is, however, fallacious to reason from the fact that an order for discovery can be made as ancillary to a *Mareva* injunction to the conclusion that it cannot be made except as ancillary to such an injunction. The source of the jurisdiction is the same, and so is the ground for exercising it, viz. that it appears to the court to be just and convenient to do so. It is necessary to consider why no such order has been made in the past, and why it is sought now.

Before judgment, as Dillon L.J. pointed out in *Ashtiani v. Kashi* [1987] Q.B. 888, 902, the disclosure of foreign assets cannot be regarded

as ancillary to the making of a *Mareva* injunction limited to English assets and cannot stand on its own feet as a primary exercise of jurisdiction if the *Mareva* exercise is limited to English assets. What is important for present purposes is that Dillon L.J. accepted that the exercise must be so limited, unless a tracing claim is involved, in order to confine within proper limits what must be acknowledged to be an exception to the principle of *Lister & Co. v. Stubbs* (1890) 45 Ch.D. 1. Given these constraints, it is difficult to see how an order for pre-trial discovery of assets could ever be justified except in aid of a *Mareva* injunction or where the plaintiff was claiming to trace assets. After judgment, however, as Order 48 itself shows, these constraints no longer have any force. The court has power to make orders against a judgment debtor's assets by way of execution, and to order discovery of its assets in order to make execution effective. The reason why no such orders have previously been made is that it is normally sufficient to invoke the provisions of Order 48.

In *A. J. Bekhor & Co. Ltd. v. Bilton* [1981] Q.B. 923, 954, Stephenson L.J. said:

"In my judgment a judge has the duty to prevent his court being misused as far as the law allows, but the means by which he can perform that duty are limited by the authority of Parliament, of the rules of his court and of decided cases. Those means do, however, include what is reasonably necessary to performing effectively a judge's duties and exercising his powers. In doing what appears to him just or convenient he cannot overstep their lawfully authorised limits, but he can do what makes their performance and exercise effective. He has a judicial discretion to implement a lawful order by ancillary orders obviously required for their efficacy, even though not previously made or expressly authorised. This implied jurisdiction, inherent because implicit in powers already recognised and exercised, and so different from any general or residual inherent jurisdiction, is hard to define and is to be assumed with caution. But to deny this kind of inherent jurisdiction altogether would be to refuse to judges incidental powers recognised as inherent or implicit in statutory powers granted to public authorities, to shorten the arm of justice and to diminish the value of the courts."

In the present case the order sought may properly be said to be sought in aid of or for the purpose of implementing of the judgment previously obtained by the applicants. It is, within proper limits, the policy of these courts to prevent a defendant from removing its assets from the jurisdiction or concealing them within it, so as to deny a successful plaintiff the fruits of his judgment. This is the policy which underlies the *Mareva* jurisdiction, before and after judgment, pre-trial discovery of assets in aid of the *Mareva* jurisdiction and Order 48. That policy can only be given effect if a defendant can be ordered when necessary to provide information about the nature and whereabouts of its assets. It can only be given effect in the present case if the court has power to make the order sought. Although Order 48 is not available, the underlying policy of that Order would be forwarded, not frustrated, by the order. There is no doubt that it is just and convenient to make it. No ground has been put forward why I should exercise my discretion against making the order, and I can see none.

Millett J.        Maclaine Watson & Co. v. I.T.C. (Ch.D.)        [1987]

There is, of course, no jurisdiction in the court to invade the privileges and immunities conferred by the Order of 1972 on the executive chairman and other officers of the I.T.C. The applicants accept that the executive chairman cannot be required to provide the information sought. Paragraph 15(1) of the Order of 1972 accords to him the like immunity from suit and legal process as is accorded to a diplomatic agent, and article 31.2 of Schedule 1 to the Diplomatic Privileges Act 1964 provides that a diplomatic agent shall not be obliged to give evidence as a witness.

No similar privilege or immunity is accorded to other officers of the I.T.C. Paragraph 16 of the Order of 1972 accords them immunity from suit and legal process only "in respect of things done or omitted to be done by them in the course of the performance of their official duties." It was submitted on behalf of the I.T.C. that this gives them immunity from legal process to compel them to give evidence in respect of anything known to them by virtue of their official position.

I cannot accept this. An order requiring a person to attend and give evidence is, of course, legal process, but to substitute these words for those in paragraph 16 of the Order of 1972, and to treat that paragraph as if it granted the officers immunity from the making of any order requiring them to attend and give evidence in respect of anything done or omitted to be done by them in the course of the performance of their official duties, is likely to give rise to error. It is the process itself, that is to say, the order of the court, not the evidence which must be in respect of things done or omitted to be done by the officer in question. The order which the applicants seek does not arise from, and is not in respect of, anything done or omitted to be done by any of the I.T.C.'s officers.

In any case, I do not propose to make an order requiring any particular officer of the I.T.C. to attend and give oral evidence. I do not think that it is necessary to do so. I propose to order that the I.T.C. shall disclose to the applicants full particulars of the nature, value and location of all its assets within the United Kingdom, such disclosure to be verified by an affidavit to be made by the I.T.C. by a proper officer thereof whom it may nominate for the purpose and to be served on the applicants' solicitors within seven days from today. I will for the present confine the order to assets within the United Kingdom without deciding that that is the full extent of the jurisdiction. I shall give liberty to both parties to apply.

*Appeal dismissed.*
*Order accordingly on the motion.*

Solicitors: *Elborne Mitchell & Co.; Cameron Markby.*

T. C. C. B.