# EXHIBIT 29

**quinn emanuel** trial lawyers | london

90 High Holborn, London WC1V 6LJ, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100

Writer's Direct Dial No.
**+44 207653 2019**

Writer's Email Address
**aidanorourke@quinnemanuel.com**

13 October 2025

**BY EMAIL**

Sullivan & Cromwell LLP
One New Fetter Lane
London, EC4A 1AN

FAO: Amanda Flug Davidoff; Thomas White; Hattie R Middleditch
davidoffa@sullcrom.com
whitet@sullcrom.com
middleditchh@sullcrom.com

Our ref: AAO/08838-00001

Dear Sirs / Madams

**(1) Palladian Partners, L.P. (2) HBK Master Fund L.P. (3) Hirsh Group LLC (4) Virtual Emerald International Limited v (1) The Republic of Argentina (2) The Bank of New York Mellon (as Trustee), FL-2019-000010 (the "Proceedings")**

1. We refer to: (a) the outstanding judgment debt owed by the Republic pursuant to the Order of Mr Justice Picken dated 9 June 2023 (the "**Judgment Debt**"); and (b) your letter of 19 September 2025. We adopt the terms defined in previous correspondence.

   **Judgment Debt and the Republic's failure to pay**

2. The amount of the Judgment Debt is not in dispute, and the judgment is final and unappealable following the Republic's failed appeal to the Court of Appeal and the Supreme's Court's decision of 7 October 2024 declining permission for a second appeal.

3. The Judgment Debt became payable on 28 November 2024, as recorded in Mr Justice Picken's Order of 25 July 2025.

4. Accordingly, the Judgment Debt is now almost one year overdue.  The original payment to which it relates fell due almost ten years ago.

**quinn emanuel urquhart & sullivan uk llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Quinn Emanuel Urquhart & Sullivan UK LLP is a limited liability partnership registered in England and Wales (with registered number OC337278) and is authorised and regulated by the Solicitors Regulation Authority.  A list of members and their professional qualifications is open to inspection at our registered office, 90 HIgh Holborn, London WC1V 6LJ, United Kingdom.

5. Other than the amounts drawn down pursuant to the Letter of Credit and payment of the Claimants' costs, the Republic has not made any payments towards the Judgment Debt.

6. The amount outstanding as at 30 September 2025 is, by our calculation, EUR 1,559,318,610.91 including interest to date.

7. As explained further below although the Republic previously told the Court of Appeal that it intended to pay the Judgment Debt, and provided evidence about the budgetary process in relation to how payment would work, the Republic has never explained its failure to pay the Judgment Debt, nor indicated any expected timeline for payment, nor the means by which it intends to pay.

8. The Republic has also now declined, by your 19 September 2025 letter, to identify the banks with which it holds accounts in England and Wales.

9. In light of that position, the Claimants seek information as to: (a) the proposed timing and means for payment of the Judgment Debt; and (b) assets against which the Judgment Debt may be enforced.

10. Please respond to the requests set out in this letter by **27 October 2025**.

11. As explained in more detail below, we understand that the Republic is already compiling information and documents regarding its asset position for the purpose of certain US enforcement proceedings, such that the information and documents requested in this letter should be readily available.

12. If the Republic declines to provide the requested information and documents voluntarily, the Claimants intend to apply for orders compelling disclosure of the requested information and documents.

**Timing and means of payment**

13. As the Court of Appeal's judgment records, the Republic told the Court, by its legal representatives, that it would have to find funds to satisfy the Judgment Debt when it became final.[1]

14. However, the Claimants have not been able to identify any steps which the Republic has taken in the last year to make good on the assurances given to the Court of Appeal, or in respect of its payment obligation under the 9 June 2023 Order.

15. We note that, at the hearing of the application for conditions on the grant of permission to the Republic to appeal, the Republic's position was that the Republic's Permanent Supplementary Budget Law would permit the Republic to budget for payment of the Judgment Debt once the appeal process had been exhausted (but that this could not be done

---

[1] Phillips LJ's judgment on the Claimants' successful application for conditions on the grant of permission to appeal: see *Palladian Partners LP v Republic of Argentina* [2024] EWCA Civ 139 at [22].

until all appeals were exhausted).[2] The appeal process has now been exhausted for a year. However, the Republic has not given any indication to the Claimants as to what steps have been (or will be) taken to allocate funds from Argentina's national budget to pay the Judgment Debt.

16. The Republic should now therefore please confirm:

    a)  whether the Republic has budgeted for payment of all or any part of the Judgment Debt and, if so, when the budget provides for payment to be made.

    b)  if the Republic has not budgeted for payment of all of the Judgment Debt, then (i) why not and (ii) when does the Republic intend to budget for the Judgment Debt to be paid;

    c)  how the Republic expects to fund payment of the Judgment Debt and what the status of that financing is; and

    d)  in light of the above, when the Republic intends to pay the Judgment Debt.

**The Republic's foreign assets**

17. In circumstances where the Republic is in default in respect of the Judgment Debt (and has been for almost a year), the Claimants are entitled to seek to enforce the Judgment Debt against assets of the Republic.

18. As you know, we wrote to you on 12 September 2025 to request details of the Republic's bank accounts maintained with certain third party banks with a presence in England and Wales, further to the interim third party debt orders sealed on 6 August 2025. That request was made to expedite inquiries with the relevant banks where: (a) the Republic is likely to maintain its accounts at any number of banks and in different names; and (b) the Claimants are not privy to how or where the Republic maintains its accounts.

19. You responded to our letter on 19 September 2025. However, that response does not identify what bank accounts are held by the Republic with the third-party banks or otherwise. Your letter instead refers to the witness statement of Mr. García Hamilton filed in the Petersen Energía judgment recognition proceedings in the English courts (CL-2024-000129), in which Mr. García Hamilton states his understanding that the Republic holds no assets within the UK other than those used for diplomatic or consular purposes. That witness statement was prepared in February 2025, which is now some 8 months ago.

20. As an initial point, that witness statement is not evidence in the present Proceedings and is not up to date. In any event, Mr. García Hamilton's stated understanding is not determinative of the Republic's asset position in England and Wales for at least the following reasons:

    a)  *First*, whether assets are used solely for consular or diplomatic purposes is a factual

---

[2]  See again Phillips LJ's judgment at [20].

question for the Court to determine after relevant assets are identified.  Your reliance on Mr García Hamilton's witness statement avoids saying whether (and if so what) assets are held, and instead substitutes the Republic's assertion that such assets are held for diplomatic or consular purposes in place of the factual assessment required to ascertain the correct position.

b) *Second*, Mr. García Hamilton does not explain what he understands to constitute an asset of the Republic. He does not explain, for instance, whether he considered the existence of assets not held in the name of the Republic but in which the Republic has a beneficial or other legal interest.

c) *Third*, and in any event, it appears Mr. García Hamilton is unlikely to have had full knowledge of the Republic's asset position as at February 2025. We refer in particular to the transcript of the hearing before Judge Preska of the US District Court for the Southern District of New York on 29 July 2025. That hearing concerned the scope of further searches the Republic was required to conduct for the purpose of identifying its assets to the Petersen Energía claimants. The Republic explained to the Court regarding the difficulties it faced in identifying assets and as to the lack of comprehensive asset records to hand at that time.[3] Indeed, the Republic's attorney emphasised that assets could not be identified simply by "*pushing a button*".[4]

21. The lack of clarity regarding the identity and location of the Republic's assets within the UK is consistent with the broader position, whereby the Claimants do not know what foreign assets the Republic maintains whether in the UK or abroad. This lack of knowledge necessarily impedes the Claimants' entitlement to enforce the Judgment Debt.

22. We understand that, further to the 29 July 2025 hearing, the Republic was directed by Judge Preska to conduct further searches regarding its asset position.[5]  We also understand that, since that direction was made, the Republic has identified certain centralised databases containing information about assets of ministries and state entities, amongst other steps taken.[6] We therefore understand the Republic to now be in a position to provide current information about its foreign assets for the purposes of these Proceedings.

23. The Claimants therefore ask the Republic to please list:

a) all foreign bank accounts, brokerage accounts, trust accounts, custodial accounts, or other financial institution accounts; and

b) all other foreign assets of the Republic exceeding £500,000 in value, giving the value, location and details of all such assets. This should include, without exclusion:

---

[3]  Transcript of hearing before Judge Preska on 29 July 2025, pages 7-13.
[4]  Transcript of hearing before Judge Preska on 29 July 2025, page 11, lines 11-12.
[5]  Transcript of hearing before Judge Preska on 29 July 2025.
[6]  Joint letter addressed to Judge Loretta A. Preska dated 3 September 2025 re: Discovery Matters, pages 2-3 (Document 789), *Petersen Energía Inversora, S.A.U. and Petersen Energía S.A.U. v. Argentine Republic*, No. 15 Civ. 2739 (LAP), Dist. Ct. SDNY.

      i.   any debt owed to the Republic;

      ii.   any letter of credit issued by any financial institution upon the Republic's application or for its benefit;

      iii.   any escrow accounts established in connection with the sale of any asset by Argentina; and

      iv.   any contract relating to natural resources, energy or public infrastructure, between the Republic and any person outside of Argentina.

24. For the avoidance of doubt, the Republic should identify all assets in which it has either a legal or beneficial interest, regardless of whether the asset is held in the Republic's name or not and whether solely or jointly owned.

**Foreign assets held by the Central Bank**

25. Section 1 of the Charter of the Central Bank of the Argentine Republic ("**BCRA**") states that the BCRA is a self-administered national government entity. However, under that Charter, the BCRA:

    a)  is empowered to serve as the financial agent for the national government and as a depository and agent for the Republic;

    b)  is empowered to hold and administer the Republic's gold and foreign exchange reserves, and other foreign assets; and

    c)  acts within the policies set by the national government and for the purpose of promoting the national interest.

26. We understand that the Republic's position in other litigation has been that the BCRA is a separate legal entity and its assets are not necessarily those of the Republic. However, this is not determinative of the question of who owns the assets in question. For example, it is apparent from the BCRA's express power to act as depository, agent and administrator for the Republic that there are likely to be assets held or administered in that capacity which are assets of the Republic and not of the BCRA independently.

27. The Claimants are aware of at least one instance where assets held in the name of the BCRA have been found by a Court to be assets of the Republic. We refer to the decision of the United States Court of Appeals for the Second Circuit in *Attestor Master Value Fund LP v. Republic of Argentina* 113 F.4th 220 (2d Cir. 2024), in which reversionary interests in collateral securing certain bonds issued by the Republic in the early 1990s were held to be payable in name to the BCRA, but to belong to the Republic and not to the BCRA (with the Court of Appeals holding that the Republic's contention to the contrary was "*meritless*").

28. The BCRA holds extensive foreign assets.  The Claimants do not have visibility as to which

of these assets are in fact assets of the Republic, whether held by or in the name of the BCRA as agent or otherwise for the benefit of the Republic.

29. The Claimants therefore request that the Republic please list:

    a) all foreign assets held by or in the name of the BCRA as agent for the national government;

    b) all foreign assets held by or in the name of the BCRA as depository and agent for the Republic; and

    c) all foreign assets otherwise held by or in the name of the BCRA for the benefit of the Republic.

30. For the avoidance of doubt, these requests extend to gold and foreign exchange reserves that the BCRA holds and administers for the Republic. According to reporting from September 2024,[7] for example, an estimated 60 per cent of the Republic's gold reserves have been moved to the UK by the BCRA and used for swaps in the London Bullion Market. However, the Claimants do not yet know the precise location or value of the Republic's gold reserves in the UK, or the proceeds of any transaction..

31. The Claimants therefore request that the Republic, in particular, please:

    a) confirm the location of the Republic's gold and foreign exchange reserves, including the quantities and currencies held in different jurisdictions;

    b) confirm the quantity and approximate value of the Republic's gold reserves within the UK;

    c) provide copies of any swap agreements entered into with respect to the Republic's gold reserves in the UK; and

    d) provide documents in the Republic's control sufficient to identify and locate the Republic's gold reserves within the UK.

32. We look forward to hearing from you promptly, and in any event by **27 October 2025**.

Yours faithfully

**QUINN EMANUEL URQUHART & SULLIVAN UK LLP**

*cc. Reed Smith, solicitors for the Trustee*

---

[7] https://www.thegoldobserver.com/p/bucking-gold-repatriation-trend-argentina, accessed on 13 October 2025.