# EXHIBIT 34

**132**

## Omega Group Holdings Ltd & Ors v Kozeny & Ors. A

Queen's Bench Division (Commercial Court).
Peter Gross QC (sitting as a deputy High Court judge).
Judgment delivered 6 September 2001.

*Civil procedure – Conflict of laws – Anti-suit injunction – Claimants claimed
damages against defendants for fraudulent misrepresentation, breach of fiduciary
duty, breach of contract and conspiracy – Defendant sought to depose certain US* B
*witnesses intended to be called to give evidence in the English proceedings –
Whether use of US deposition procedure unconscionable and an abuse of process –
United States Code, Title 28, s. 1782.*

This was an application by the claimants for an injunction restraining the first
defendant from pursuing various proceedings commenced by him in the US.

The claimants were investment vehicles of various investment funds. In proceedings in C
England they claimed damages against the defendants for fraudulent misrepresentation,
breach of fiduciary duty, breach of contract and conspiracy relating to an investment in
the privatisation process in the republic of Azerbaijan. The claimants' case was that they
had been defrauded into investing some US$182m into privatisation options and
vouchers issued by the republic of Azerbaijan and that the defendants had
misappropriated the moneys for their own purposes. They claimed an account of what
the defendants had done with the moneys. They obtained worldwide freezing orders. D
There was satellite litigation in other jurisdictions to protect assets in those jurisdictions
and thereby ensure the effectiveness of the English proceedings. The defendants alleged,
among other defences, that the claimants' investments were accompanied by substantial
corrupt payments and that accordingly their claims were tainted with illegality and
should fail for that reason. The first defendant obtained orders from US District Courts,
pursuant to s. 1782 of Title 28 of the United States Code, for employees and former E
employees of the claimants and for investors to make witness statements. The claimants
objected to the proposed deposition of the witnesses who were going to give evidence in
the English proceedings. The claimants argued that in the circumstances the use of
s. 1782 was unconscionable and therefore an abuse of process and should be restrained
by injunction. The first defendant argued that he was entitled to use US procedure to
obtain evidence in the US. The first defendant further argued that the claimants had in
effect agreed to that position when obtaining a stay in Colorado and resisting a stay of the F
English proceedings and should not be allowed to resile from it.

*Held,* granting an injunction:

1.  In general the English court left it to the parties to obtain the evidence they thought
necessary for the advancement of their case by the means of their choosing, provided such
means were lawful in the country where they were deployed. The fact that a party to
English litigation was able to obtain evidence by means of a right available in a foreign G
country significantly different from that available in the English system did not by itself
constitute unconscionable conduct. No injunctive relief was to be granted unless the
applicant satisfied the threshold test of unconscionability. It could be unconscionable for
a party to English litigation to apply for US pre-trial depositions under s. 1782. (South
Carolina Insurance Co v Assurantie Maatschappij 'De Zeven Provincien' NV [1987] AC
24 considered.) H

2.  In this case it would be unconscionable, in the sense that it would be oppressive,
vexatious and an interference with the process of the court, for the first defendant to
pursue the s. 1782 applications in respect of witnesses intended to be called to give
evidence in the English proceedings. The witnesses would be subjected to unwarranted
double cross-examination and the trial would suffer from unnecessary duplication. It did
not matter that the witnesses might be familiar with US procedure; oppression had to be

A
**judged from the English perspective. There was also a real risk that a witness once deposed in the US might be discouraged from attending the trial in England.**

3. The balance of convenience was in favour of an injunction. If the witnesses did give evidence in England, the first defendant had nothing to gain from the US pre-trial depositions. If the witnesses did not produce witness statements in the English proceedings, the defendant could apply to lift the injunction. The risk of a last minute

B
failure to appear did not outweigh the factors which led to the conclusion that pursuit of the s. 1782 applications was unconscionable.

4. The claimants were right to have brought the application for an injunction in England rather than raising it in each individual court in the US. The US courts had no selfish interest in s. 1782 applications and recognised that parties might be enjoined by foreign courts from invoking the section.

C
5. The stay in Colorado was obtained by the claimants on the basis only that the first defendant would be entitled to make such use of s. 1782 as was proper in all the circumstances. Likewise the claimants, resisting a stay in England, refused to give an undertaking to permit the defendant to adopt US deposition procedures.

6. The claimants were entitled to an injunction, conditional on the giving of an undertaking to use best endeavours to produce witness statements and to call the relevant witnesses at trial and to inform K promptly if they believed that that was not going to

D
happen.

The following case was referred to in the judgment:

*South Carolina Insurance Co v Assurantie Maatschappij 'De Zeven Provincien' NV* [1986] QB 348 (CA); [1987] AC 24 (HL).

Simon Mortimore QC and Dominic Dowley (instructed by Macfarlanes) for the claimants.

E
Bernard Eder QC and Huw Davies (instructed by SJ Berwin) for the defendants.


JUDGMENT


**Peter Gross QC: Introduction and overview**

F
1. The claimants are investment vehicles of various investment funds. In proceedings in this country, they claim damages against the defendants for fraudulent misrepresentation, breach of fiduciary duty, breach of contract and conspiracy relating to an investment in the privatisation process in the republic of Azerbaijan; they further claim an account of what the defendants have done with their moneys. In essence, the claimants' case is that in March to June 1988 they were defrauded by the defendants into investing some US$182m into privatisation vouchers and options issued by the republic of Azerbaijan; they allege that moneys paid by them were

G
misappropriated by the defendants for their own purposes.

2. As is apparent, the first defendant is an individual ('Mr Kozeny'). He, together with the third and fourth defendants (collectively, 'the Kozeny defendants') allege, amongst other defences, that the claimants' investments were accompanied by substantial corrupt payments, totalling over US$50m, to the president of Azerbaijan and other Azeri officials. The Kozeny defendants say that these arrangements were known to and agreed by the claimants; accordingly, the claimants' claims are tainted with illegality and corruption and must fail. I

H
shall refer to this as the 'illegality and corruption' defence.

3. It follows from this briefest of factual summaries in litigation replete with factual controversy, that the parties are advancing grave allegations against each other. Moreover, it is at once plain that Mr Kozeny faces claims of a most substantial nature.

4. Against this background, which is all or virtually all that needs be said concerning the underlying issues in the English litigation, the claimants make the present application. In

**134**          **Omega Group Holdings Ltd v Kozeny**          **[2002] CLC**
                      (*Peter Gross* QC)

summary, the claimants apply for an injunction restraining Mr Kozeny from pursuing various proceedings commenced by him in the US. Again in summary, those proceedings, in the courts of New York and Connecticut, were brought by Mr Kozeny pursuant to s. 1782 of Title 28 of the United States Code, for the purpose of deposing certain individuals in accordance with the well-known US procedure and in order to obtain documents from them. As I understand it, in each case the s. 1782 applications were made without prior warning to the witnesses or the claimants and in each case the District Court made the orders sought.

5. In the event and following the hearing before me, the parties have helpfully agreed that the question of documentary disclosure from the individuals in question can be stood over for the time being. I am therefore concerned only with the deposition aspect of the US proceedings brought by Mr Kozeny and the claimants' application to injunct him from pursuing those proceedings in that regard.

6. Section 1782 provides, in so far as material, as follows:

> '*Assistance to foreign and international tribunals and to litigants before such tribunals*: (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement... for use in a foreign or international tribunal. The order may be made... upon the application of any interested person and may direct that the testimony or statement be given... before a person appointed by the court... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken... in accordance with the Federal Rules of Civil Procedure.'

7. The claimants object to the proposed deposition of witnesses who may be identified and categorised as follows ('the relevant witnesses'):

(1) *Employees*

(i) Mr Leon Cooperman, chairman and chief executive officer of Omega Advisors Inc (the parent of claimants 1–5 in the Omega action);

(ii) Mr Clayton Lewis, a former employee of Omega Advisors Inc and managing principal of Pharos Capital, whose funds were invested through the sixth claimant in the Omega action;

(iii) Mr Maurice Greenberg, Mr Ed Matthews, Mr Frank Wisner and Mr David Pinkerton, AIG (whose subsidiary Marlwood Commercial Inc is the claimant in the Marlwood action).

(2) *Ex-employees*

Mr Eric Vincent and Mr Paul Swigart, both former employees of Omega Advisors Inc.

(3) *Investors*

Mr Aaron Fleck and Mr Frederick Bourke, both investors in the third defendant, Oily Rock Group Ltd.

8. In a nutshell, the claimants object to the proposed deposition of the relevant witnesses because they intend to produce witness statements from them and to call them to give oral evidence at the trial of the English proceedings in London (save that it is intended that Mr Greenberg should give his evidence by way of video-link). Each of the relevant witnesses, save for Mr Greenberg, has confirmed in writing his willingness to 'submit a witness statement and to attend to give evidence at trial in London' in the English proceedings; it has been confirmed in writing on behalf of Mr Greenberg that he intends to submit a witness statement and to attend through video-link to give evidence at the London trial. In these circumstances, the claimants say that Mr Kozeny's use of s. 1782, so far as concerns the relevant witnesses, is unconscionable and an abuse of the process of this court and should be restrained by injunction accordingly.

9. It may be noted that the claimants do not object to Mr Kozeny's use of s.1782 to depose other individuals, including notably Senator George Mitchell, whom the claimants do not intend to call to give evidence at the London trial.

© **2002 Sweet and Maxwell Ltd.**
bcom2002 case   50 Mp   134   —bcom4100

10. Again in a nutshell, Mr Kozeny submits that there is jurisdiction to grant an injunction to restrain the taking of the proposed depositions if and only if it is held that to do so would be unconscionable in the sense of abuse of process; here it would not be unconscionable. To the contrary, his case is that he is, as he is entitled to do, gathering evidence to defend himself, utilising means lawful in the country in which they are being invoked, namely the US. He also has a 'short answer' as to why an injunction should in any event not be granted; namely, that the claimants are resiling from a position previously adopted both in obtaining a stay of proceedings in the USA and in resisting a stay here and for that reason alone should be barred from obtaining the injunctive relief sought.

11. Later, I shall revert to the rival cases in a little more detail. Before proceeding further, it is, however, convenient to 'clear the decks' so to speak, in order to clarify and focus on the real issues in dispute.

(1) For the purposes of the present application, the claimants accept that the illegality and corruption defence is arguable.

(2) The claimants likewise accept that the relevant witnesses have relevant evidence to give; indeed such acceptance on the part of the claimants is inevitable, given that they intend to call those witnesses to give evidence at the trial in London.

(3) Certain of the witnesses, it may be noted, are individuals of considerable eminence, obvious examples being Mr Greenberg and Senator Mitchell. I mention this matter because it has been touched on in the affidavit evidence. Eminence does not, of course, confer immunity from the taking of depositions. Nor do the claimants in fact contend otherwise, as their approach to the proposed deposition of Senator Mitchell makes clear. The eminence of any witness is accordingly an irrelevance and I put it to one side.

(4) Further and for completeness, many of the matters canvassed, in particular by the claimants, in the vigorous exchanges between the parties in their affidavit or statement evidence were, rightly, not pursued before me. I need say no more of them.

(5) The application before me is brought by the claimants for an injunction. The claimants must satisfy the relevant test for an injunction in this context, or fail. This is not an application by Mr Kozeny for the grant of letters rogatory or any relief.

12. With these considerations in mind, I can state the question of principle which arises on this application:

> 'Given the intention on the part of the claimants to call the relevant witnesses to give oral evidence at the trial in London, is it unconscionable for Mr Kozeny to pursue the s. 1782 applications in the USA?'

If the answer is 'no', then the claimants' application must fail. If the answer is 'yes', then it is common ground that there is jurisdiction to grant the injunction sought by the claimants but (i) I would still need to be satisfied as a matter of discretion that I should do so and (ii) Mr Kozeny's 'short answer' would remain to be considered.

**The rival cases**

13. Mr Mortimore QC's argument for the claimants may be summarised as follows:

(1) The conduct of Mr Kozeny in pursuing the s. 1782 applications in the USA is unconscionable, in the sense of being oppressive, vexatious and interfering with the due process of the court. Whether conduct is oppressive must be judged by English standards in the context of litigation being pursued here under English procedure; what is normal in the USA is irrelevant. Mr Kozeny's conduct is unconscionable (in the relevant sense) because the witnesses will be subjected to double cross-examination; once in the USA by way of deposition and once here at the trial. There is, further, a risk that such conduct will interfere with and prejudice preparation for the trial or the trial itself, not least in that a witness or witnesses might be discouraged by the deposition cross-examination from attending at the trial to be cross-

examined again. *South Carolina Insurance Co v Assurantie Maatschappij 'De Zeven Provincien' NV* [1987] AC 24 was not in the event concerned with depositions (as opposed to documentary disclosure), let alone depositions of witnesses who are coming to give evidence at an English trial; its reasoning either supports the claimants' case or is at least not adverse to it.

(2) As to the balance of convenience, that favours the grant of an injunction. Building on the arguments as to unconscionability, the grant of an injunction avoids duplication and the risk of prejudice to preparation for the trial and the trial itself. The claimants do not wish and should not be obliged to prepare for trial under two different legal systems. Conversely, the evidence which it is the avowed intention of Mr Kozeny to secure and preserve by way of the s. 1782 applications, will be available for the trial by way of witness statements and the attendance of the witnesses to give oral evidence at the trial. The witnesses are key witnesses so the claimants will or will do all in their power to produce them; if witness statements are not forthcoming, Mr Kozeny could renew his application; as to non-attendance of a witness or witnesses at the trial, the claimants would be foolhardy to permit such a situation to develop; it would risk aborting or postponing the trial which is the last thing the claimants want; the risk of non-attendance is accordingly negligible. Further, the exercise contemplated by Mr Kozeny will be costly, in circumstances where Mr Kozeny has himself asserted that he does not have the resources to defend the English proceedings; accordingly, even if the claimants in due course obtained an order for costs against Mr Kozeny in respect of the s. 1782 applications, there is serious doubt as to recoverability. Mr Kozeny, it is said, is adopting a 'scorched earth' policy.

(3) Mr Kozeny's 'short answer' will not bear the weight sought to be put on it. The claimants have not resiled from any previous position. Neither in seeking a stay of the Colorado proceedings nor in resisting a stay of the English proceedings have the claimants ever agreed to anything more than that Mr Kozeny will be free in English proceedings to make proper use of s. 1782. That he may do with regard to witnesses whom it is not intended to call in the English proceedings; conversely, the claimants have never agreed, to a hybrid procedure involving witness statements under English rules and depositions under the US system, in respect of the same witnesses. Moreover, as a matter of perspective, the English proceedings have always been intended as the substantive proceedings; it is here that worldwide freezing orders have been obtained in both actions. Other proceedings, in the Bahamas, the British Virgin Islands and Colorado have been satellite proceedings launched to protect assets in those jurisdictions and, thereby, to ensure the effectiveness of the English proceedings. Mr Kozeny's attempt to stay the English proceedings and to proceed with the Colorado proceedings should be seen in this context.

(4) For completeness, it is appropriate to make the application once, before this court, rather than in the individual US courts, seized of the s. 1782 applications; such an application should be brought before the Court which is, effectively, the 'seat' of the substantive proceedings. An injunction granted by the English court would assist not interfere with the US courts. It is to be remembered that the s. 1782 procedure is designed to assist foreign courts and litigants before such courts; the US courts have no 'selfish' interest in s. 1782; as the US authorities to which I was referred (but which are unnecessary to list here) make clear, the US courts contemplate that parties may be enjoined by foreign courts from invoking s. 1782.

14. Again in summary, Mr Eder QC put the case for Mr Kozeny as follows:

(1) First and as foreshadowed, Mr Eder underlined that this was an application for an injunction. The application must fail, unless, on the question of principle, the claimants satisfied me that Mr Kozeny's pursuit of the s. 1782 applications in the US was unconscionable. Having regard to the unconscionability test, the determination of this threshold inquiry may well substantially dispose of the second question as to the balance of convenience; at all events, here, the questions of jurisdiction and balance of convenience did not fall into watertight compartments.

(2) Both the outcome of and the reasoning in *South Carolina* [1987] AC 24 before the House of Lords assisted Mr Kozeny. A party was free to obtain and present the evidence which he

© 2002 Sweet and Maxwell Ltd.

A    needs in English proceedings by his own means provided that such means are lawful in the country in which they are used. To the contrary, the claimants' submissions contained echoes of the approach adopted at first instance and in the Court of Appeal in the *South Carolina* litigation, overturned in the House of Lords.

(3) Viewed in the light of *South Carolina*, there was nothing unconscionable in Mr Kozeny utilising s. 1782. This was so whether or not the relevant witnesses were coming to give evidence here. All Mr Kozeny was doing was obtaining evidence which, as was common ground, was relevant to the English proceedings. Mr Kozeny, it was to be remembered, had not chosen England as a forum for these proceedings.

(4) As to the position of the relevant witnesses, they were all perfectly familiar with the US procedure of pre-trial depositions. It should not be assumed that they would regard it as anything out of the ordinary still less oppressive.

(5) Importantly, the highest the claimants could put the matter was that they intended that the relevant witnesses should attend and give evidence. They did not however control the witnesses or all of them. The risk of their not producing witness statements or not attending at trial could not in any way be dismissed as fanciful. It was a real risk, if anything, emphasised by the claimants' concerns that the experience of pre-trial deposition might put the witnesses off attending. As the trial date approached, witnesses might well become reluctant to attend. If one or two important witnesses did not attend at the last minute, there would be real difficulties in curing prejudice to Mr Kozeny, if indeed it was possible to cure it at all.

(6) Pre-trial depositions would 'not necessarily' be co-extensive with cross-examination at the trial. It was possible that the deposition procedure might generate answers leading to a further train of inquiry.

(7) As to costs, these would be comparatively small indeed in the context of the litigation as a whole; in any event, however, it would be unconscionable to enjoin Mr Kozeny from defending himself as he sees fit, faced as he is with a claim for nearly US$200m.

(8) For all these reasons, the application for an injunction should be refused as a matter of principle. Additionally, the claimants had no answer to Mr Kozeny's 'short answer'. In order to obtain the stay of the Colorado proceedings and resist the stay of the English proceedings, the claimants had asserted that Mr Kozeny would not be prejudiced. Had the proceedings continued in Colorado, Mr Kozeny could have invoked the US pre-trial deposition procedure as of right. It was not, by whatever legal route, open to the claimants now to resist Mr Kozeny's pursuit of his s. 1782 applications on grounds which would not have been available to them had the matter proceeded before the Colorado court.

15. As will be apparent, the arguments on both sides were formidable and, if I may say so, formidably presented. I am very grateful to both Mr Mortimore QC and Mr Eder QC for their respective submissions.

16. For completeness, I record that both parties approached the application on an 'all or nothing' basis. Understandably, neither party promoted a solution involving an injunction in respect of some but not all of the relevant witnesses. When I asked as to the possibility of a 'halfway house' there was distinctly muted enthusiasm from both sides. On reflection, I shall deal with the application on an 'all or nothing' basis and say no more of any 'halfway house'.

H    **The South Carolina case**

17. It is next appropriate to turn to the *South Carolina* case [1987] AC 24, from which both parties sought to derive assistance. The facts were these. South Carolina, an American insurance company, reinsured the liability of another American insurance company, UNI. In turn, South Carolina reinsured (or retroceded) this risk in the London market with Dutch, Middle Eastern and Far Eastern companies (for brevity, 'the retrocessionnaires'). South Carolina commenced proceedings in London against the retrocessionnaires, advancing a claim

under the contract between them. The retrocessionnaires were (as noted by Lord Brandon, [1987] AC, at p. 32E–F) remote from the facts in dispute. Before service of a defence in the English action the retrocessionnaires lodged a petition in a US district court seeking, inter alia, an order for pre-trial discovery of documents relevant to the claim and South Carolina's contract of reinsurance with UNI, against persons resident in the US who were not parties to the English action, or agents of any party to the English action ('the American third parties'). There was no other way in which the retrocessionnaires could obtain the documents in question (save by agreement from South Carolina, which was not forthcoming); discovery was not available as the documents were not in the possession or control of South Carolina; nor could the documents be obtained by subpoena because their possessors, the American third parties, were not within the jurisdiction of the English court.

18. South Carolina applied to the Commercial Court for an injunction restraining the retrocessionnaires from taking any further step in the American proceedings or enforcing any order made therein. Hobhouse J granted the injunction. The retrocessionnaires appealed to the Court of Appeal: [1986] QB 348; at this stage, the retrocessionnaires abandoned that part of their original application which had sought the pre-trial deposition of witnesses from the American third parties: [1986] QB, at p. 358D–E. The application continued as one for discovery of documents alone. The Court of Appeal dismissed the retrocessionnaires' appeal. The retrocessionnaires appealed to the House of Lords who allowed their appeal.

19. There can be no doubt that if the South Carolina litigation had rested with the decisions of Hobhouse J and the Court of Appeal, it would have been at the very least strongly supportive (indeed, probably decisive) of this case in favour of the claimants. The flavour of the judgment of Hobhouse J (unreported) can be taken to appear from a short passage cited by Lord Brandon ([1987] AC, at p. 34C):

> '[the matter] involves a question of principle as to whether or not the English court should retain the control of its own procedure and the proceedings that are before it. I have no doubt that the answer... to that question is that the English court should retain that control.'

In the Court of Appeal, Griffiths LJ, with whom Slade LJ and Lloyd LJ agreed, said ([1986] QB, at p. 358B–E):

> 'Once the parties have chosen or accepted the court in which their dispute is to be tried they must abide by the procedure of that country and that court must be master of its own procedure. Litigation is expensive enough as it is, and if a party fighting a case in this country has to face the prospect of fighting procedural battles in whatever other jurisdiction his opponent may find a procedural advantage it may impose intolerable burdens, and encourage the worst and most oppressive form of procedural forum shopping. We should set our face against any such situation developing. Severe dislocation to the timetable of the English litigation is a readily foreseeable consequence of unrestrained access to foreign procedural remedies. This is likely to cause hardship or inconvenience not only to the other party to that litigation but will also affect other litigants... As the judge said, the court will lose control of its own proceedings. Furthermore, one party might be able to gain a very unfair advantage in the English procedure if he was able to take the deposition of and cross-examine a witness whom he would never call on his own behalf at the trial, for example, the employees or business associates of his opponent. I think Mr Sumption [counsel for the retrocessionnaires] recognised this when he said he would be content to accept the stay in respect of his application to take the depositions of the witnesses from... [the American third parties]...
>
> I am therefore satisfied that as a matter of principle the court must have an inherent jurisdiction to make any necessary order to ensure that the litigation is conducted in accordance with its own procedures.'

20. As already noted, matters did not, of course, rest with the decision of the Court of Appeal. The House of Lords allowed the retrocessionnaires' appeal, dealing with the matter as

did the courts below, as a matter of principle: p. 39G. The leading speech was delivered by Lord Brandon; for present purposes, I would respectfully seek to summarise his reasoning as follows:

(1) The relevant test for the grant of an injunction was whether the conduct complained of was unconscionable. No exhaustive definition of 'unconscionable' should be attempted but it included conduct which was oppressive, vexatious or which interfered with the due process of the court: see pp. 40C–E, 41D.

For completeness and interposing here, it may be noted that Lord Goff of Chieveley expressed certain reservations as to the proposition that the power of the court to grant injunctions is restricted to certain categories: pp. 44–45. As, with respect, nothing in this case turns on these reservations, it is unnecessary to say more of them here.

(2) The retrocessionnaires' conduct did not constitute an interference with the (English) court's control of its own process; in general, the court does not exercise any control over the manner in which a party obtains the evidence which he needs to support his case. The basic principle,

'underlying the preparation and presentation of a party's case in the High Court in England is that it is for that party to obtain and present the evidence which he needs by his own means, provided always that such means are lawful in the country in which they are used.'

The application to the US court did not constitute an interference with the English court's control of its own process: see pp. 41G–42C.

(3) Further, by utilising a right potentially available to them under US law, albeit significantly different from that available in the English court, the retrocessionnaires had not interfered with the procedure of the English court:

'All that they have done is what any party preparing his case in the High Court here is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case.'

(See p. 42D–H.)

(4) Finally, Lord Brandon addressed questions of costs and convenience but in terms related to the facts of that case and which (as I understood it) did not assist one way or the other on the argument in the present case: see pp. 42H–43H.

(5) In the result, Lord Brandon concluded that there was no such interference by the retrocessionnaires with the procedure of the English court as would amount to unconscionable conduct and so justify the grant of an injunction: p. 44A–B.

21. In these circumstances, the guidance for the present case which I respectfully derive from *South Carolina* is as follows:

(1) No injunctive relief is to be granted unless the applicant satisfies the threshold test of unconscionability.

(2) In general, the English court leaves it to the parties to obtain the evidence they think necessary for the advancement of their case by the means of their choosing, provided such means are lawful in the country where they are deployed.

(3) The fact that a party to English litigation is able to obtain evidence by means of a right available in a foreign country significantly different from that available in the English system does not, by itself, constitute unconscionable conduct. Essentially, this is a corollary of proposition (2) above.

(4) It follows that there is no blanket ban on a party to English litigation seeking to utilise the US procedure for pre-trial deposition in order to obtain evidence for his case.

(5) That said, I do not read *South Carolina* as constituting authority for the proposition that it can never be unconscionable for a party to English litigation to apply for US pre-trial

depositions by way of s. 1782. I do not think that *South Carolina* goes or could go that far, essentially for the following reasons:

(i) The decision in *South Carolina* was confined to documentary disclosure; on the facts as outlined by Lord Brandon, it might be thought that there was a strong case for permitting the retrocessionnaires to obtain such disclosure.

(ii) As noted, the application for pre-trial depositions had been abandoned. While I do not think that it is permissible to read into the decision of the House of Lords the inference that the result would have been different had it not been abandoned, such abandonment was regarded as a factor of note: see, per Lord Brandon, at p. 38E–H. It follows that the decision as such does not address the considerations raised specifically by pre-trial depositions, still less by a s. 1782 application in respect of witnesses whom it is intended to call to give oral evidence in English proceedings.

(iii) In the present context, blanket permissions are, perhaps, inherently unlikely.

(6) Accordingly, it remains open to an applicant to demonstrate on the facts of the case that a particular application for US pre-trial depositions by way of s. 1782 is unconscionable. I am fortified in reaching this conclusion by a consideration of the views expressed, albeit briefly, in *Documentary Evidence*, Hollander & Adam (7th edn.) at pp. 266–267.

**Decision – the question of principle**

22. With *South Carolina* very much in mind, I turn to answer the question of principle, outlined in para. 12 above. Notwithstanding the force of Mr Eder's arguments, I have come to the conclusion that Mr Mortimore's are to be preferred and that the answer should be 'yes'. That answer is subject to an undertaking to be given by the claimants, as dealt with below. In the light of the discussion so far, my reasons can be expressed relatively shortly and are these.

23. I do think that it would be unconscionable, in the sense that it would be oppressive, vexatious and constitute an interference with the due process of this court, for Mr Kozeny to pursue the s. 1782 applications in the US in respect of witnesses, whom it is intended to be called to give oral evidence at the trial in this country. As it seems to me, in the case of such witnesses and as a matter of practical justice and good sense, the hybrid procedure produces the worst of all worlds:

(1) If the relevant witnesses (i) give English witness statements, (ii) are then deposed in the US, (iii) thereafter attend to be cross-examined in the English trial, they will have been subjected to unwarranted double cross-examination and the trial will suffer from unnecessary duplication. I am not persuaded to reach a contrary view by the fact that the witnesses are or may be familiar with US deposition procedures in the context of US litigation. In any event, I accept Mr Mortimore's submission in this regard that, here, oppression must be judged by English standards.

(2) Conversely, accepting as I do that there is a real, if unquantifiable, risk that a witness once deposed in the US may be discouraged from attending the trial in England in order to be cross-examined a second time, the s. 1782 applications pose a risk of interference with the trial itself. It would be most unsatisfactory for the trial court to be left with depositions from witnesses in such circumstances and to be deprived of their live testimony at the trial itself.

(3) For the reasons already discussed, I do not think that South Carolina precludes the conclusion which I have reached. In this case and in respect of witnesses who are intended to come and give oral evidence at trial here, depositions are different and unconscionable. I should add that each party addressed me on the apprehended consequences of a ruling adverse to its case; the claimants submitted that if I was against them, the use of pre-trial depositions would become commonplace whenever witnesses were located in the US; for Mr Kozeny, it was argued that an unfavourable decision would render s. 1782 of little use. I am not sure that it is right to view the matter in this way; individual cases ultimately turn on their own facts. So

A    far, however, as a decision of this court, necessarily subject to *South Carolina*, may have wider policy ramifications, then I do not shrink from saying that the use of s. 1782 to depose the selfsame witnesses who will give witness statements and attend to give oral evidence here, has, in general, little to commend it.

(4) The conclusion that the pursuit of the s. 1782 applications is unconscionable is not displaced by Mr Kozeny's concerns, to which I have given anxious consideration. These B    concerns are addressed more fully in para. 24 below; to the extent that they go to the threshold inquiry of unconscionability rather than the balance of convenience, then my reasoning in para. 24 is applicable here.

I accordingly conclude that there is jurisdiction to grant the injunction sought by the claimants.

24. While accepting, as I do, from Mr Eder that in this case there is no watertight C    compartment dividing questions of jurisdiction and balance of convenience, I turn next and separately to the balance of convenience. Sometimes, it will not be appropriate to enjoin even unconscionable conduct. But this is not such a case. I am satisfied that on the question of principle the balance of convenience tells in favour of the grant of an injunction:

(1) For the same reasons which render the pursuit of the s.1782 applications unconscionable.

D    (2) Because I am satisfied that Mr Kozeny's understandable concerns can be met, to a very large extent, without dooming the parties to pursuit of the s. 1782 applications, at least in the circumstances which presently prevail; I elaborate on this point in subpara. (3)–(7) below.

(3) On the assumption that the relevant witnesses do give witness statements and attend to give oral evidence, Mr Kozeny stands to gain no legitimate advantage by the use of pre-trial depositions.

E    (4) Mr Kozeny is not in a position to identify any specific, concrete matter which would be covered by pre-trial depositions that would not be covered by cross-examination at the trial. Very fairly and accurately but instructively, Mr Eder's submission was only that the pre-trial depositions would 'not necessarily' prove co-extensive with cross-examination at the trial.

(5) I am satisfied on the evidence which I have seen from very reputable London solicitors and the witnesses themselves that there is, presently, a genuine intention to produce witness F    statements and to attend the trial to give oral evidence.

(6) Should, however, any of the relevant witnesses not produce a witness statement, then doubtless, Mr Kozeny could apply to lift the injunction. Should the situation with regard to attendance at the trial change, then, provided that Mr Kozeny (or his legal team) is promptly informed, steps could again rapidly be taken to lift the injunction. Should a last minute crisis develop which could have been averted by the claimants, then although the matter would be G    one for the trial judge, the claimants will be manifestly at risk of having the trial aborted or delayed at their cost and the court is unlikely, in such circumstances, to be powerless to exclude witness statement evidence.

(7) What remains are last minute crises over which the claimants have no control or instances of sudden and irreparable ill-health. I accept that to such extent Mr Kozeny may be exposed but (i) the claimants too would be deprived of a witness whom (ex hypothesi) they H    wish to call; (ii) while a matter for the trial Judge, Mr Kozeny's predicament would at least be likely to attract sympathetic consideration; (iii) I am simply not satisfied that the risk factor is such as to outweigh the considerations which lead me to conclude that pursuit of the s. 1782 applications is unconscionable.

25. Subject, therefore, to consideration of Mr Kozeny's suggested 'short answer', I am minded to grant an injunction. Before turning to that 'short answer' and to the question of an appropriate undertaking, I mention certain matters for completeness:

(1) I have not been influenced in my decision in favour of the grant of an injunction by questions of costs. Such concerns are not unimportant but are outweighed by Mr Kozeny's need to defend himself.

(2) I am satisfied, to the extent that it is in dispute, that the claimants are right to have brought this application to this court rather than raising it in each individual court in the US, seized of a s. 1782 application.

(3) While questions of comity always require careful consideration in connection with injunctions impacting, however indirectly, on the pursuit of legal proceedings in another country, I do not see any particular problem here. As already mentioned, US courts have no selfish interest in s. 1782 applications; the s. 1782 jurisdiction exists, helpfully, to assist foreign courts and parties to foreign legal proceedings.

**Decision – Mr Kozeny's 'short answer'**

26.  While attractive at first blush, I am satisfied that Mr Kozeny's suggested 'short answer' is unsustainable; I am unable to accept Mr Eder's submission that the claimants have resiled from any previously held position adopted to obtain a stay of the Colorado proceedings and to resist a stay of the English proceedings. I do not think that the claimants have, either in Colorado or here, ever said more than that, in this jurisdiction, Mr Kozeny will be entitled to make such use of s. 1782 as is proper in the circumstances. I cannot find any agreement or representation to the effect that Mr Kozeny is to be placed in an identical position to that which he would have been in had the matter proceeded in Colorado (even assuming, without deciding, that, had it done so, he would have been entitled to have pre-trial depositions taken without limit as of right).

27.  So far as concerns the proceedings in Colorado, Babcock CJ appears, with respect, to have had this very matter in mind in his memorandum opinion and order granting the claimants a stay. Having weighed in the balance the fact that Mr Kozeny would have less access to discovery in England than in the federal court, nonetheless the Chief Justice granted a stay. I am unable to read the reference to s. 1782 in that memorandum opinion and order as suggesting that Mr Kozeny would be placed in a position in London equivalent to that which would or might have prevailed had the Colorado proceedings continued. Nor am I able to read anything said by the claimants to the Colorado court (and to which I have been referred) as going beyond that which I have already suggested; namely, that Mr Kozeny will be entitled to such use of s. 1782 as is proper in all the circumstances.

28.  To my mind, the position in the English proceedings is even plainer. The evidence from Mr Kozeny expressly recognised the risk that s. 1782 was not a substitute for Mr Kozeny's rights under the Federal Rules of Civil Procedure. On the material available to me, nothing said by the claimants contradicted this assertion. To the contrary, Mr Mortimore QC for the claimants said (according to the relevant transcript) that although the US procedure was different:

> 'there is no reason why we should be required... to give some sort of undertaking to permit them to adopt US deposition procedures if we are allowed to proceed in England.'

29.  I therefore reject Mr Kozeny's suggested 'short answer'. Though it is academic, had I been of the view that the 'short answer' was well-founded, I would have agreed with Mr Eder that, by whichever precise legal route, it would have barred the grant of an injunction.

**An appropriate undertaking**

30. For the reasons given, I am therefore minded to grant the claimants the injunction sought. While the precise terms of any order must await a further hearing and the assistance of counsel, it seems right to me and I so hold, that the grant of an injunction is conditional on the

© 2002 Sweet and Maxwell Ltd.

**QB**              **Omega Group Holdings Ltd v Kozeny**                    **143**
                              (*Peter Gross* QC)

A    claimants giving an appropriate undertaking, designed to reflect the claimants' current stance and to protect Mr Kozeny so far as consistent with the grant of an injunction in principle. Subject to matters of drafting, this undertaking should require the claimants:

(1) To exercise best endeavours, (i) to produce witness statements from the relevant witnesses, (ii) to call the relevant witnesses at trial to give oral evidence (in the case of Mr Greenberg, by way of video-link);

B    (2) To notify Mr Kozeny promptly should they have reason to believe that (1)(i) and/or (1)(ii) cannot be achieved.

*(Order accordingly)*
_____