# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re Application of: | § | |
| | § | |
| PALLADIAN PARTNERS, L.P., HBK | § | |
| MASTER FUND L.P., HIRSH GROUP | § | |
| LLC, and VIRTUAL EMERALD | § | |
| INTERNATIONAL LIMITED, | § | |
| | § | |
| *Petitioners*, | § | No. 3:25-MC-00058-S-BT |
| | § | |
| FOR AN ORDER TO TAKE | § | |
| DISCOVERY FOR USE IN FOREIGN | § | |
| PROCEEDINGS PURSUANT TO 28 | § | |
| U.S.C. § 1782 | § | |

## RESPONDENTS' BRIEF IN OPPPOSITION TO PETITIONERS' <u>AMENDED APPLICATION FOR 28 U.S.C. § 1782 DISCOVERY</u>

**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti
Texas Bar No. 24058096
George M. Padis
Texas Bar No. 24088173
3102 Maple Avenue, Suite 400
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
    george.padis@sbaitilaw.com

*Counsel for Kelsier Labs,LLC d/b/a Kelsier*
*Ventures, Hayden Mark Davis, Gideon Davis and*
*Mark Thomas Davis*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ...............................................................................................1

II.     SPECIFIC RELEVANT FACTS ........................................................................2

III.    LEGAL STANDARDS ......................................................................................5

IV.     ARGUMENTS AND AUTHORITIES...............................................................6

        A.      Two Respondents Do Not Reside and Cannot Be Found in This District,
                and One Has No Relevance .....................................................................8

        B.      Section 1782 Generally Does Not Apply to Judgment Enforcement
                Proceedings and Specifically Does Not Apply to Palladian's
                Enforcement Efforts................................................................................8

        C.      The Question is Whether the Discovery is Reasonably Calculated
                "For Use" in a Foreign Proceeding—It is Not......................................12

        D.      The *Intel* Factors Weigh Against Granting the Application .............13

                1.      Argentina is a Participant in the Foreign Proceeding;
                        Respondents Are Not. ...............................................................13

                2.      No Foreign Proceeding is Currently Pending. ........................14

                3.      Palladian's Appllication Plainly Seeks to Circumvent the
                        Limitations in Discovery Offered by the King's Court and
                        Argentinian Courts....................................................................14

                4.      This Fishing Expedition Should Be Denied—The Requests Are
                        Hugely Intrusive and Unduly Burdensome...............................15

IV.     CONCLUSION................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Ativos Especiais II – Fundo de Investimento em Direitos Creditorios – NP*,
No. 24-MC-119 (LJL), 2024 WL 4169550 (S.D.N.Y. Sept. 12, 2024)....................................13

*Banca Pueyo SA v. Lone Star Fund IX (US) L.P.*,
55 F. 4th 469 (5th Cir. 2022)......................................................................................5, 6

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*,
869 F.3d 121 (2d Cir. 2017).......................................................................................7, 14

*Bravo Express Corp. v. Total Petrochemicals & Ref. USA, Inc.*,
613 F. App'x 319 (5th Cir. 2015)...................................................................................5

*Ecuadorian Plaintiffs v. Chevron Corp.*,
619 F.3d 373 (5th Cir. 2020).........................................................................................6

*Euromepa. v. R. Esmerian*,
154 F.3d 24 (2d Cir. 1998) ................................................................................. *passim*

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000)...........................................................................................4

*Ganske v. Mensch*,
480 F. Supp. 3d 542 (S.D.N.Y. 2020).............................................................................3

*Hurlock v. Kelsier Labs, LLC*,
No. 1:25-cv-03891 (S.D.N.Y.) ...................................................................................3, 5

*In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*,
No. 24-MC-119 (LJL), 2024 WL 4169550, (S.D.N.Y. Sept. 12, 2024)..............................13

*In re Civil Rogatory Letters Filed by Consulate*,
640 F. Supp. 243 (S.D. Tex. 1986)..................................................................................8

*In re Harbour Victoria Investment Holdings Ltd.*,
No. 15-MC-00127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015) .........................................11

*In re Kim,*, 2024 WL 3430583, at *4 (N.D. Tex. June 26, 2024), *R&R adopted*, 2024 WL
3841549 (N.D. Tex. Aug. 15, 2024)..............................................................................6-7

*In re Mayra Adela González Moreno for an Ord. to Obtain Discovery for Use in Foreign Proc.
Pursuant to 28 U.S.C. § 1782*,
No. 3:23-mc-00042-N-BT, 2024 WL 5690969 (N.D. Tex. Aug. 22, 2024).....................5, 7, 8

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006) ...................................................................13

*In re MT Baltic Soul*,
    No. 15 MISC 319, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ...............................9

*In re Palladian Partners, L.P.*,
    No. 1:25-MC-00330 (JLR), 2025 WL 2814719 (S.D.N.Y. Oct. 3, 2025)...................... *passim*

*In re YS GM Marfin II LLC*,
    No. 20-MC-182 (PGG), 2022 WL 624291 (S.D.N.Y. Mar. 2, 2022)......................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).................................................................................................6, 8

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
    No. 14 CIV. 9997(CM), 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ...........................8, 9, 12

*Kiobel v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018) ...................................................................................13

*Osario v. Harza Eng'g Co.*
    890 F.Supp. 750 (N.D. Ill. 1995) .............................................................................9

*Palladian Partners, L.P. v. The Republic of Argentina*,
    No. 1:25-cv-1954 (D.D.C.)...................................................................................9, 10

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ......................................................................................13

*Tacul, S.A. v. Hartford Nat'l Bank & Tr. Co.*,
    693 F. Supp. 1399 (D. Conn. 1988) ........................................................................10

## Rules & Statutes

FED. R. CIV. P. 69 ......................................................................................................9

28 U.S.C. § 1782........................................................................................ *passim*

28 U.S.C. § 1782(a) ................................................................................... *passim*

**<u>Other Authorities</u>**

https://x.com/BitpushNewsCN/status/1890533149035147619 .....................................................3

https://x.com/JMilei/status/1890606683291779195 ....................................................................3

Respondents Hayden Davis, Gideon Davis, Charles Thomas Davis, and Kelsier Labs LLC d/b/a Kelsier Ventures ("Respondents") respectfully object to the 28 U.S.C. § 1782 application for discovery (the "Application") filed by Petitioners/Applicants Palladian Partners, L.P., HBK Master Fund L.P., Hirsh Group LLC, and Virtual Emerald International Limited (collectively "Palladian"). Palladian's overbroad Application amounts to an impermissible fishing expedition, untethered to any fact or issue in dispute in a foreign adjudication, that should therefore be rejected.

## I.    **INTRODUCTION**

Palladian's Application under 28 U.S.C. § 1782 seeks discovery in the United States ostensibly for use in a foreign proceeding (in the United Kingdom) brought by bondholders against the bonds' issuers, the Government of the Argentine Republic. The judgment is final, and all appeals have been exhausted. The only question Palladian's Application purportedly seeks to resolve is whether certain cryptocurrency assets once controlled by Respondents—the proceeds from the $LIBRA meme coin launch—are the property of the Argentine Government and, therefore, potentially available to satisfy Palladian's judgment against the Argentine Government.

They're not, and we've told them that. Thus, this is a classic impermissible fishing expedition. Palladian has been informed, and offered supporting evidence, that the assets in question—those derived from a cryptocurrency token launch called $LIBRA—do not belong to the Argentine Government. Palladian has no evidence that they do. On the contrary, the Argentine Government is a party to the proceeding in the United Kingdom, is subject to discovery there, and has apparently never taken the position that it owns the assets in question.

More importantly, Palladian's Application sweeps far beyond requests for discrete evidence of ownership. A district judge within the Southern District of New York has already held so in a related proceeding: all but three of Palladian's requests are irrelevant to the question of the

1

Argentine Government's ownership over the $LIBRA assets, and therefore, are not "for use" in a foreign adjudicative proceeding. The Application is, in short, overbroad.

For these reasons and those further explained below, the Application is improper and should be denied.

## II.    SPECIFIC RELEVANT FACTS[1]

The Viva La Libertad! Crypto project (the "Project") was launched on February 14, 2025, for the stated purpose of supporting of Argentine businesses. App. Ex. 1, Hayden Davis Decl. ¶ 3 [APP-003]. The Project proposed launching a token, $LIBRA, to serve as a local cryptocurrency for Argentine businesses. *Id.* ¶ 1. Growing demand would, in theory, sustain the value of the currency. *Id.* The idea was to generate excitement and international demand, then use a portion of the tokens or the token proceeds as grants to Argentine businesses to support them and, at the same time, encourage them to use and accept crypto. *Id*.

This purely private Project was initially supported by Javier Milei (the president of Argentina) in his personal capacity. *See id.* ¶ 3. In expressing support on the day of the launch, Milei explicitly stated the project was private and not affiliated with the Argentine Republic (translated from Spanish), "This *private project* will be dedicated to encouraging the growth of the Argentine economy, funding small Argentine businesses and ventures" (emphasis added):

---

[1] We recite only those additional facts that directly pertain to Respondents because Judge Rochon has already accurately set forth the relevant background regarding the English proceedings and $LIBRA in her Opinion and Order in a parallel proceeding denying Palladian's section 1782 application for discovery. *See In re Palladian Partners, L.P.*, No. 1:25-MC-00330 (JLR), 2025 WL 2814719, at *1–3 (S.D.N.Y. Oct. 3, 2025).



After Milei's initial tweet of support, the price of $LIBRA tokens surged before plummeting after speculation circulated online that Milei's Twitter / X account had been hacked:[3]



After the rapid rise and fall of $LIBRA's price, Milei issued a statement (translated from Spanish) shortly after midnight ET on February 15 deleting the initial tweet and reiterating that he had supported the "*private* venture with which I obviously have no connection" (emphasis added)[4]:

---

[2] *See, e.g.*, Am. Class Action Compl. ¶ 268, Dkt. No. 115, *Hurlock v. Kelsier Labs, LLC*, No. 1:25-cv-03891 (S.D.N.Y. July 30, 2025).

[3] https://x.com/BitpushNewsCN/status/1890533149035147619 (last accessed Dec. 4, 2025). A district court "has the discretion to take judicial notice of internet materials." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 546 (S.D.N.Y. 2020) (taking judicial notice of "tweets" that are all "related to the same topic" "for the limited purpose of noting what the documents state, rather than to 'prove the truth of their contents.'").

[4] https://x.com/JMilei/status/1890606683291779195 (last accessed Dec. 5, 2025).

3



**Javier Milei** ✔
@JMilei

🔁 Translated from Spanish Show original ⚙

A few hours ago I published a tweet, like so many other infinite times, supporting an alleged private venture with which I obviously have no connection whatsoever.

I wasn't aware of the details of the project and after becoming aware I decided not to continue giving it exposure (that's why I deleted the tweet).

To the filthy rats of the political caste who want to take advantage of this situation to do harm, I want to tell them that every day they confirm how slimy politicians are, and they increase our conviction to kick them out on their asses.

VLLC!

The next graph plots the time and price of $LIBRA as well as the relevant tweets: [5]



---

[5] Source: https://birdeye.so/solana/token/7Zt2KUh5mkpEpPGcNcFy51aGkh9Ycb5ELcqRH1n2GmAe?tab=markets (last accessed Dec. 4, 2025). The district court may take judicial notice of the price of a publicly traded cryptocurrency. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000).

4

These matters are currently before the Honorable Jennifer L. Rochon who is considering Respondents' fully briefed motion to dismiss the entire case. *Hurlock v. Kelsier Labs, LLC*, No. 1:25-cv-03891 (S.D.N.Y.).

### III.    LEGAL STANDARDS[6]

"Section 1782(a) seeks to facilitate third-party discovery in American district courts, from subjects that reside or are found in the district, in aid of 'interested parties' in foreign proceedings." *Banca Pueyo SA v. Lone Star Fund IX (US) L.P.*, 55 F. 4th 469, 473 (5th Cir. 2022). In relevant part, the statute provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a [foreign tribunal] .... The order may be made pursuant to a letter rogatory issued, or request made, by a [foreign tribunal] or upon the application of any interested person.

28 U.S.C. § 1782(a). Three statutory requirements must be satisfied before a district court may grant assistance under section 1782(a):

> (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed;
>
> (2) the discovery must be for use in a proceeding before a foreign tribunal; and
>
> (3) the application must be made by a foreign or international tribunal or any interested person.

*Bravo Express Corp. v. Total Petrochemicals & Ref. USA, Inc.*, 613 F. App'x 319, 322 (5th Cir. 2015) (internal quotations omitted).

Even if the statutory requirements are met, district courts may still exercise discretion and

---

[6] The following legal standard is draw from Judge Rutherford's Order in *In re González Moreno*, No. 3:23-MC-00042-N-BT, 2024 WL 5690969, at *3 (N.D. Tex. Aug. 22, 2024).

deny section 1782(a) discovery. The Supreme Court has held that district courts should consider

the following factors, known as the *Intel* factors, in exercising their discretion:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, since nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach and therefore their evidence may be unobtainable absent § 1782(a) aid,

> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,

> (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and

> (4) whether the § 1782(a) request is unduly intrusive or burdensome.

*Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 n.3 (5th Cir. 2020) (quoting *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)) (internal quotations omitted).

Section 1782(a) applications are often submitted initially on an ex parte basis to the district courts, but respondents have a right to challenge an applicant's entitlement to discovery by disputing the statutory requirements and the *Intel* factors. *Banca Pueyo SA*, 55 F.4th at 475.

## IV.    ARGUMENT AND AUTHORITIES

Respondents contest that Palladian has established the first and second statutory requirements and further assert that, even so, the *Intel* factors weigh against granting Palladian's Application. On the first statutory requirement ("resides or is found in the district"), federal courts within the Fifth Circuit have held that, although statutory in nature, the standard is similar to a personal jurisdiction constitutional analysis. *See In re Kim*, No. 3:24-MC-31, 2024 WL 3430583,

at *4 (N.D. Tex. June 26, 2024), *R&R adopted*, 2024 WL 3841546 (N.D. Tex. Aug. 15, 2024).[7] On the second "for use" requirement, district courts assess "*the practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *Bouvier v. Adelson In re Accent Delight Int'l Ltd.*), 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original). This requires the court to consider, among other things, "(1) whether a foreign proceeding is adjudicative in nature; and (2) whe[ther] there is actually a foreign proceeding." *Euromepa. v. R. Esmerian,*, 154 F.3d 24, 27 (2d Cir. 1998).

Even if these three requirements are satisfied, a court must next consider and weigh the following discretionary factors (often referred to as the "*Intel* factors"):

(1) Whether the person from whom discovery is sought is a participant in the foreign proceeding;

(2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign body to U.S. federal court assistance;

(3) Whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States[,]"; and

(4) Whether a request is unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264–65 (citing S. Rep. No. 1580, at 7). Courts must exercise their discretion in light of the "twin aims" of Section 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id*. at 252 (citation omitted).

We next address these issues.

---

[7] Although Judge Rutherford appears to have considered a section 1782(a) application non-dispositive in *González Moreno*, 2024 WL 5690969, at *7, we note that Judge Horan reached the opposite conclusion in *Kim*, 2024 WL 3430583, at *4.

**A.      TWO RESPONDENTS DO NOT RESIDE AND CANNOT BE FOUND IN THIS DISTRICT, AND ONE HAS NO RELEVANCE.**

Respondents Gideon Davis and Charles Thomas Davis do not reside in Texas—and therefore do not reside and cannot be found in this District. *See* App. Ex. 2, ¶ 3 [APP-008]; App. Ex. 3, ¶ 3 [APP-010], respectively. Respondent Kelsier Labs LLC has no documents and had no participation in the $LIBRA coin launch. App. Ex. 1, Hayden Davis Decl. ¶ 14 [APP-005]. The failure to meet these elements is grounds to deny the application as to these Respondents. *See González Moreno*, 2024 WL 5690969, at *4–5. Also, there is no evidence that any of these Respondents have any relevant information.

Therefore, the Application should be denied as to Gideon and Charles Thomas Davis.

**B.      SECTION 1782 GENERALLY DOES NOT APPLY TO JUDGMENT ENFORCEMENT AND SPECIFICALLY DOES NOT APPLY TO PALLADIAN'S ENFORCEMENT EFFORTS.**

As noted above, the burden falls on the applicant seeking section 1782 discovery to establish "that the second statutory requirement has been satisfied." *See Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14-CV-9997, 2015 WL 3439220, at *5 (S.D.N.Y. Feb. 5, 2015).

While the Fifth Circuit has not yet passed on the question, courts in this Circuit and elsewhere have held that 28 U.S.C. § 1782 does not apply to attempts to enforce a final foreign judgment where it is not shown that the evidence is necessary for an adjudication in a foreign proceeding. *See, e.g.*, *In re Civil Rogatory Letters Filed by Consulate*, 640 F. Supp. 243, 244 (S.D. Tex. 1986). For example, the Southern District of Texas rejected a section 1782 application because "[t]he scope of this section is limited to the court's role in procuring testimony or evidence for use in a foreign tribunal." *Id.* The district court reasoned, "[n]othing in this or any other section provides for the *enforcement of a foreign judgment* through the use of [§ 1782]." *Id.* (emphasis added); *see also Intel*, 542 U.S. 241, 57–58 (foreign proceeding requires tribunal acting "as a first-instance decisionmaker" on merits); *id.* at 259 (noting that "proceeding" only requires that a

"dispositive ruling by the [tribunal] … be within reasonable contemplation); *accord Euromepa v. R. Esmerian*, 154 F.3d 24, 28 (2d Cir. 1998) (denying petition for 28 U.S.C. § 1782 discovery for use in use in French proceeding to enforce final judgment); *Osario v. Harza Eng'g Co.*, 890 F. Supp. 750, 753 (N.D. Ill. 1995).

 Palladian's brief omits[8] that federal courts are divided on whether post-judgment collection and enforcement proceedings are "adjudicative in nature." *See Jiangsu Steamship*, 2015 WL 3439220, at *4 ("neither pre-judgment attachment nor post-judgment enforcement proceedings are 'adjudicative' in nature; indeed, the latter is the explicit holding of *Euromepa,* and if an enforcement proceeding is not adjudicative in nature, I fail to see (and Jiangsu does not suggest) how a pre-judgment security proceeding could possibly so qualify. Therefore, as long as *Euromepa* remains good law, the request for this particular form of discovery should be denied."); *see also id*. at *6 ("[A] post-judgment enforcement proceeding, if that is the sort of proceeding contemplated by Jiangsu, is exactly the sort of proceeding for which *Euromepa* held that § 1782 discovery is unavailable."). *See also In re MT Baltic Soul*, No. 15 MISC 319, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015), ("[T]he discovery Petitioners seek [in relation to a contemplated post-judgment action] is precluded by the Second Circuit's decision in *Euromepa* . . . .").[9]

 Palladian's brief further omits mention of any district court decisions within the Fifth Circuit on this issue, confining their analysis largely to the Second Circuit. Dkt. No. 22, at 19. Indeed Federal Rule of Civil Procedure 69 and state law pertaining to the domestication of foreign

---

 [8] Palladian states, accurately, that "*courts* have approved the use of Section 1782 discovery in judgment-enforcement proceedings," Dkt. No. 22, at 19 (emphasis added), but omits that not all (or even most) courts have done so.

 [9] *But see In re Palladian Partners*, 2025 WL 2814719, at *5 (noting the divide in district-court authority within the Second Circuit but deciding that certain of those "decisions persuade the Court that the contemplated [post-judgment] enforcement proceedings here are also adjudicative").

judgments appear to be the more appropriate vehicles for a post-judgment collection inquiry than section 1782. *See Tacul, S.A. v. Hartford Nat'l Bank & Tr. Co.*, 693 F. Supp. 1399, 1400 (D. Conn. 1988) ("no federal statute provides for the issuance of a writ of execution to enforce a foreign judgment pursuant to a Letter Rogatory."). What's more, Palladian has already initiated those proceedings in another first-filed civil action pending in the District for the District of Columbia in which the Republic of Argentina is a party. *Palladian Partners, L.P. v. The Republic of Argentina*, No. 1:25-cv-1954.[10] Thus, Palladian's Application falls outside section 1782(a)'s text because the discovery is not "for use" in a "foreign" proceeding; it is for use in a *domestic* proceeding already underway in another federal district court within the District of Columbia.

Even those courts within the Second Circuit that have recognized a post-judgment right to section 1782 discovery have held that "whether a given proceeding is adjudicative in nature is determined on a case-by-case basis, with 'close attention [paid] to the foreign proceeding' to determine whether the discovery sought' 'will be employed with some advantage or serve some use in the [foreign] proceeding.'" *In re YS GM Marfin II LLC*, No. 20-MC-182, 2022 WL 624291, at *5–6 (S.D.N.Y. Mar. 2, 2022). It stands to reason, however, that to make this determination, there has to actually be a foreign proceeding; otherwise, there is no way to evaluate the question. Applying this admittedly persuasive only authority, Palladian's brief fails to even fall within the ambit of the favorable smattering of Second Circuit district court decisions upon which they rely because they fail to demonstrate—let alone explain—how the discovery sought will be used in a foreign proceeding. *Id.* On the contrary, the Application confirms that the foreign judgment against the Republic of Argentina is final—all appeals have been exhausted such that it is basically *res*

---

[10] *But see In re Palladian Partners*, 2025 WL 2814719, at *7 (dismissing a similar argument because "there is no suggestion that Petitioners have filed a duplicative section 1782 application").

*judicata*.

Even if the discovery sought would make an adjudicative fact more or less likely to be true in some foreign adjudicative proceeding, Palladian does not explain how—aside from a single sentence conclusorily asserting that Palladian "will use the requested discovery to develop, refine, and/or execute their judgment[.]" Dkt. No. 22, at 21. That is not "for use in a foreign proceeding" because it does not relate to an adjudicative action—at best, it confirms the ministerialist purpose of this discovery. As Judge Rochon pointed out, discovery that may allow Palladian to figure out whether or where to file a proceeding is not "for use in a foreign proceeding" because it means the proceeding "is entirely speculative." *In re Palladian Partners*, 2025 WL 2814719, at *10 (citing *In re Harbour Victoria Investment Holdings Ltd.*, No. 15-MC-00127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015) (rejecting § 1782 petition where petitioner said it would "commence confirmation proceedings in those countries to enforce the arbitral award" "[i]f the discovery . . . confirm[ed] the existence of these bank accounts," but would "not commence such proceedings" "[i]f the discovery [did] not confirm the[ir] existence."). In other words, section 1782 does not serve the same role as, say, post-judgment discovery, of figuring out whether there are assets to execute against.

To the extent Palladian relies on large swaths of the generic and self-serving attorney declaration of a British solicitor to establish that any "fish" found in Texas will actually be used in an adjudication in the United Kingdom (*see* Dkt. No. 22, at 20–21 nn.70–71 (citing O'Rourke Decl. ¶¶ 35–56, 57–69)), this Court should not. Perhaps due to Mr. O'Rourke's unfamiliarity with the American legal system, his declaration avers the "Davis Respondents have . . . confirmed their custody of assets belonging to the Republic [of Argentina] associated with the $LIBRA token in ongoing proceedings before the Southern District of New York," citing a letter motion (Dkt. No.

93) filed by the plaintiff in that case. Decl. O'Rourke ¶ 58. O'Rourke's sworn testimony before this Court is false. Plaintiff's letter motion attached as exhibit 4 makes clear that Hayden Davis requested a carve-out from a (since-vacated) TRO to allow certain cryptocurrency assets to be transferred "to the custodial wallet designated for the *Viva La Libertad* ('VLL') initiative in the Argentine Republic," Ex. 4, at 1, ¶ 2, to be "deployed in accordance with the VLL program," i.e., distributed as grants to private businesses, *id.* at 2. Nothing in the letter motion states or even suggests that Respondents somehow "confirmed" the $LIBRA assets "belong[] to the Republic" of Argentina, because it's not true.

To wit, discovery to help "develop" or "refine" is precisely the kind of misuse of section 1782 federal courts—even those within the Second Circuit—routinely reject. *See, e.g., id.; Euromepa*, 154 F.3d at 28 (rejecting use of section 1782 application where discovery would only go to execution of the judgment); *Jiangsu*, 2015 WL 3439220, at *6 (rejecting section 1782 discovery, even though such "discovery would assuredly be 'in aid' of is Jiangsu's decision-making").

Therefore, because Palladian has not carried its burden to establish that the discovery is "for use in a proceeding in a foreign or international tribunal," the Application should be denied.

## C.    THE QUESTION IS WHETHER THE DISCOVERY IS REASONABLY CALCULATED "FOR USE" IN A FOREIGN PROCEEDING—IT IS NOT.

As Judge Rochon held in the New York parallel proceeding, the only relevant question to be asked is whether the evidence sought tends to show that Argentina owns any of the assets. Any discovery that does not fit this question, according to Judge Rochon, was irrelevant, and she denied the application before her because the discovery did not go to that question, was massively overbroad, and was unduly burdensome. *In re Palladian Partners*, 2025 WL 2814719, at *10 ("The sheer breadth of the information requested, well beyond that which would be relevant to the

ownership of Argentinian assets, from a custodian who would not be the central source of relevant information, as set forth in the Court's discussion of the fourth *Intel* factor, suggests that Petitioners are on a fishing expedition and that the application is 'misusing the § 1782 device.'").

    This Court should hold likewise.

**D.**    THE *INTEL* FACTORS WEIGH AGAINST GRANTING THE APPLICATION.

    **1.**  **Argentina Is a Participant in the Foreign Proceeding; Respondents Are Not.**

    There is no evidence that any Respondent hereto is party to a foreign proceeding. But according to the Application, Argentina is a litigant in the underlying proceeding. So, this Application is essentially akin to seeking third-party discovery into evidence that could just as easily be provided by the litigant—Argentina. In rejecting the use of section 1782 under similar facts, "everything else being equal, if the applicant can obtain the records from the party to the foreign proceeding, it should obtain them from that party." *In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, No. 24-MC-119, 2024 WL 4169550, at *11 (S.D.N.Y. Sept. 12, 2024); *see also id*. at *10 ("A Section 1782 applicant does not strengthen its application when it seeks documents nominally from a third party when those documents are, in fact, under the control of a party."). Moreover, courts evaluating this factor do not look to the literal subpoena recipient but rather to "the real party from whom documents are sought." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)); *see also In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (suggesting that the relevant question is whether the documents are "within the [foreign tribunal's] reach").

    Here, discovery should have been obtained against Argentina in the first instance. The core issue is whether Argentina owns an interest in the $LIBRA tokens—otherwise, there is no basis to execute on them to enforce a judgment that is solely against Argentina. Argentina would be the

best person to seek documents from that would show it has ownership over the $LIBRA tokens. Nothing in the submissions shows that any discovery against *Argentina* revealed that Argentina owns any interest or claims an interest in those assets. If Argentina does not own an interest— which it does not—then none of the discovery sought in the Application is relevant because the balance of the discovery solely goes to what happened to the $LIBRA tokens and funds.

This factor weighs against this Court granting the overbroad discovery requested.

**2.    No Foreign Proceeding Is Currently Pending.**

While there apparently is a UK proceeding in general, there is no proceeding pending against Argentina to determine its ownership over these assets. Thus, there is no foreign proceeding that the discovery would be pertinent to. Additionally, Palladian has made no showing that they have the "practicable ability" to use the discovery—e.g., were they to obtain the requested discovery, they would be able "inject[] the evidence into the proceeding"— *In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, No. 24-MC-119, 2024 WL 4169550, at *11 (S.D.N.Y. Sept. 12, 2024) and obtain relief through the foreign proceeding. *Bouvier v. Adelson* (*In re Accent Delight Int'l Ltd.*), 869 F.3d 121, 131–32 (2d Cir. 2017) (citations omitted). Applicants do not identify a foreign proceeding or tribunal capable of seizing the assets and forcing them to be turned over. And if the answer is that they intend to seek to compel Hayden Davis, that would require a *domestic* proceeding.

Therefore, this element weighs against granting relief.

**3.    Palladian's Application Plainly Seeks to Circumvent the Limitations in Discovery Offered by the King's Court and Argentinian Courts.**

The analysis provided above shows that Applicants have no intention of using the discovery methods available to them under the King's Law or under Argentine law. This element also weighs against granting relief.

14

**4.  This Fishing Expedition Should Be Denied—The Requests Are Hugely Intrusive and Unduly Burdensome.**

The core issue is whether Argentina "owns" any of the $LIBRA proceeds or tokens such that they can be foreclosed on or seized in satisfaction of the judgment. The simple answer is that it does not. *See* App. Ex. 1, Hayden Davis Decl. ¶ 5 [APP-003]. All the bases cited by Palladian for why Respondents might own the assets were considered and rejected by Judge Rochon. *See In re Palladian Partners, L.P.*, 2025 WL 2814719, at *11–12. Furthermore, Milei's tweets cited above make clear that the launch was always going to be "private."

The requested discovery is a fishing expedition that is not tailored to answering this question. *See In re Ativos Especiais*, 2024 WL 4169550, at *15 ("The evidence before the Court suggests that Applicants are engaged in a fishing expedition."). As Judge Rochon found, the requests are massively overbroad and burdensome on their face—there are broad definitions, four pages of instructions that expand the scope of every issue, and the typical request is over a half page long and begins by seeking "All Documents…relating in any way to…" and the depositions topics similarly go to the same overbroad topics. *Compare In re Palladian Partners*, 2025 WL 2814719, at *12 ("the document subpoenas all begin with 'All Documents,' 'All . . . Communications,' . . ., 'which often is a red flag for overbreadth and undue burden'), *with, e.g.,* Dkt. 23-2. That is facially overbroad and unduly burdensome.

Only four requests even theoretically address the issue of Argentina's ownership. The first is Request No. 2, which at least purports to seek documents regarding whether Argentina owns any part of the Kelsier entities. The named Kelsier entities had nothing to do with the $LIBRA launch. App. Exhibit 1, Hayden Davis Decl. ¶ 14 [APP-005]. And in any event, there is no ownership by Argentina in those entities, which Respondents offered to show under a protective order and through an attestation. Request Nos. 3 and 4 also could be construed to seek evidence of

ownership—but there are no documents of this nature. And Request No. 11 likewise could seek documents of persons acting on behalf of the Argentine government with respect to ownership interests. No contracts, no drafts of contracts, no communications about a contract or about ownership by Argentina in the funds or assets exist. And Mr. Davis has testified to that under oath. App. Ex. 1, HD Decl, ¶¶ 7–8 [APP-004].

How does one prove a negative? Respondents have already proffered evidence of the facts that (a) there is no contract between Argentina and any Respondent regarding the $LIBRA coins; (b) the Tokenomics that were advertised for the $LIBRA launch show how the tokens were to be distributed—Argentina is not on the list (*id.* ¶ 9); (c) there is no control over the coins exercised by any Argentinian official or governmental body (*id.* ¶ 13); (d) the funds used to seed the $LIBRA launch came from Davis, not Argentina (*id.* ¶ 10); (e) the coins/assets remained unmoved from February 16, 2025, through the end of November 2025, before they went into the trust for months and Argentina at no time attempted to control them, claim them, use them, or otherwise control their disposition (*id.* ¶ 12); (f) the $Libra Trust has no Argentinian control over it and answers to no Argentinian official or governmental body (*id.* ¶¶ 11–12); and (g) the President of Argentina never claimed that this was an Argentinian governmental project—quite the opposite, his Tweet said it was a private launch.

Evidence of these facts was offered in good faith, to be provided under cover of a protective order and under oath, which offer was rejected in favor of "getting everything." When Respondents asked what else would show that Argentina does not own an interest, no answer was forthcoming except that all requested information needed to be provided. *That* is harassment.

The burdensomeness and harassment is especially stark given that the rest of the requests seek matters of public record or are completely irrelevant as they have nothing to do with whether

Argentina's creditors have a right to the proceeds. For example, an overwhelming amount of the documents seek things that anyone can see in the public domain on the blockchain. All transactions in the funds are on the blockchain. The blockchain is available to everyone, Palladian has not shown otherwise, and Respondents have no unique documents to offer on these. Respondents made this point to Paladian during the meet-and-confer, and Palladian refused to modify their requests in any way or narrow them.

And the requests that seek code, smart wallets instructions, dispositions, and transactions are simply not relevant to any aspect of the collection case—and certainly not to ownership, which is the only question that matters here.

Finally, there is the additional burden that this Application rests heavily on the allegations in *Hurlock v. Kelsier* pending in the Southern District of New York, No. 1:25-cv-03891. Consider first that the plaintiffs in that class action claim that the money is theirs—not Argentina's. However, in that case, discovery is stayed pending decisions on the 12(b)(6) motions. This Application is an attempt to do an end run around that limitation, and the Petitioners here should not be able to circumvent that when all they rely on are allegations in a frivolous class action brought by someone who allegedly bought and sold based upon the statements of non-parties. Any discovery here should come after discovery in that case, not before.

## V.    CONCLUSION

This Court should deny the Application in full. If any discovery is permitted, Respondents respectfully request discovery be (1) limited to ownership of $LIBRA related assets, (2) conditioned on a robust protective order in light of pending and heavily litigated matters concerning which discovery is currently stayed, and (3) any depositions be postponed until after the district court in *Hurlock* rules on the pending and fully briefed motions to dismiss.

Dated: December 5, 2025

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
New York Bar No. 4339057
**George M. Padis**
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
   george.padis@sbaitilaw.com

*Counsel for Hayden Davis, Gideon Davis,*
*Charles Thomas (Tom) Davis, and Kelsier*
*Labs LLC d/b/a Kelsier Ventures*